/3 4 ᵉ ᵘᵉ ᵍ

OLEY OLESON, APPELLANT, V. ULYSSES OLESON ET AL.,
APPELLEES.

FILED FEBRUARY 10, 1912.    No. 16,610.

1. Statute of Frauds: ORIGINAL UNDERTAKING. An agreement that, in consideration of the relinquishment of the possession of property held under a pledge, the person to whom the surrender of possession is made will pay the debt of the relinquisher, for the security of which the pledge is held, is not void under the statute of frauds. It is an original undertaking founded upon a new consideration.

2. Trial: QUESTIONS FOR JURY. All material questions of fact are for the consideration of the trier of fact; if in a trial by jury, the jury must determine them.

3. ———: DIRECTING VERDICT. A trial court is not justified in withdrawing a case from a jury and directing a verdict, if there is competent evidence from which the alleged facts may be reasonably inferred.

APPEAL from the district court for Madison county: ANSON A. WELCH, JUDGE. Reversed.

Allen & Dowling, for appellant.

Mapes & Hazen, contra.

REESE, C. J.

Plaintiff filed his petition in the district court alleging, in substance, that, prior to the date of the transactions between himself and defendants, his son Ulysses Oleson purchased from the Northwest Thresher Company a certain threshing machine and outfit, consisting of a threshing machine or separator, one 16-horse power traction engine with tender, a wind stacker and a steel tank; that plaintiff became surety upon the notes executed for the purchase price thereof, and that defendant Ulysses Oleson pledged and delivered to the plaintiff the possession of said threshing outfit, to be held by him as security to indemnify him against having to pay the notes referred to; that, while the said machinery was in his possession, the said defendants Ulysses Oleson and Ellsworth A. Bullock entered into an agreement whereby the said Ulysses was to exchange the said "Northwest" machinery to defendant Bullock for a new, larger and more expensive threshing outfit, which Bullock had for sale, he being engaged in the business of selling such machinery; that, while the said "Northwest" outfit was in the possession of plaintiff, the defendants Bullock and Ulysses Oleson came to plaintiff's home for the purpose of removing the "Northwest" machinery, but that plaintiff refused to surrender the same until he was released from liability on the notes (then amounting to $1,740) given for that outfit; that defendants Ulysses Oleson and Bullock agreed that, if plaintiff would release his lien and possession of said "Northwest" outfit, they would indemnify him against the payment of the notes, which he had given, and pay the same; that, relying on said agreement and promise, he relinquished his lien and surrendered the property, which was then removed to the place of business of defendant Bullock, retained and sold by him, and defendant Bullock thereafter exchanged the thresher he had for sale to the said Ulysses; that defendants did not comply with their promise and agreement, but failed

and refused to take up the notes, and plaintiff was required to pay them, whereby he had been damaged to the extent of the money paid, with interest thereon, amounting to the sum of $2,088, for which he asked judgment. Defendant Ulysses Oleson made default, and, failing to plead to the petition, default and judgment were entered against him. Defendant Bullock answered, denying each and every allegation of the petition. A jury was impaneled, and the trial proceeded until the close of plaintiff's evidence, when defendant Bullock moved the court to instruct the jury to return a verdict in his favor. The motion was sustained, the jury so instructed, a verdict returned as directed, and on which judgment was rendered. · Plaintiff appeals.

The motion for a peremptory instruction was based upon six grounds: (1) The petition does not state facts sufficient to constitute a cause of action. (2) The evidence fails to establish a lien or pledge of the property claimed to have been taken by defendant, or that the property was in possession or control of plaintiff at the time it was delivered to defendant. (3) That the contract alleged to have been made by defendant is void under the statute of frauds. (4, 5) The evidence failed to show any authority on the part of Clyde Bullock to make the alleged agreement on behalf of defendant. (6) The evidence is not sufficient to sustain a verdict in favor of plaintiff.

As to the first clause or ground of the motion, the substance of the petition is herein above set out, and we all agree that the objection is not well taken. The contention of defendant Bullock is that, if the contract was made as alleged, it was void under the statute of frauds. If the contract was entered into, it was founded upon a new consideration, was an original undertaking, and not void as an obligation to answer for the debt or default of another. It was not that defendant Bullock would pay the debt of Ulysses, but that, in consideration of the surrender of the property by plaintiff, he would pay and in-

demnify plaintiff against a debt which the latter owed and was obligated to pay.

The sole remaining question is as to the sufficiency of the evidence to require the submission of the case to the jury. As to the fact that such a contract was made between plaintiff and Clyde Bullock, the son of defendant Bullock, there is no conflict in the evidence. Plaintiff testified unequivocally that such a contract was made. Defendant offered no testimony. If the property had been delivered to plaintiff by Ulysses as a pledge or security against the payment of the debt by plaintiff, and plaintiff was in possession of the same at the time the alleged contract was made, this would establish the pledge and security. If there was any competent evidence of the fact, it became a question for the decision of the jury. It is not for this court to decide whether there is convincing evidence of the fact, but whether there was any competent evidence submitted tending to prove the facts alleged. Upon this question the testimony of plaintiff is not entirely harmonious. He seems not at all times to have fully understood the purport of the questions propounded. In one of his answers he says: "I was to have possession of the machine until it was paid for, and he (Ulysses) could run it, and when he paid for it I would give up all these notes." That there was some kind of an agreement between Ulysses and plaintiff was probably sufficiently established, but just what it was may not be so clear. The fact of plaintiff's possession, at the time the contract with Clyde Bullock is alleged to have been made, seems to have been then conceded by both Clyde and Ulysses Oleson. If plaintiff had possession under an agreement of the kind alleged, that would be sufficient. As the record now stands, there was sufficient evidence that the contract of indemnity and the assumption of the debt were made. Clyde Bullock was called as a witness by plaintiff, and was examined at some length, and cross-examined by defendant, but he was not interrogated by either party upon the subject of that agreement. It is

shown by the evidence that defendant Bullock sold a "Gaar-Scott" machine to Ulysses, and agreed to accept the "Northwest" machine in exchange and as part payment for the new one, and therefore the delivery to him of the "Northwest" outfit was necessary in order to the completion of the sale.

This brings us to the question of the authority of Clyde Bullock to bind defendant Bullock by the contract of indemnity, which, for the purpose of this appeal, we must assume was made. The evidence is clear that Clyde was the agent, as a salesman, for his father in the sale of threshing machines. He participated, at least, in making the contract by which the new machine was sold to Ulysses and in which the old one was to be taken in exchange. The arrangement for exchange was agreed to by defendant. As testified to by defendant when called as a witness by plaintiff, his business was buying and selling threshing machines and supplies, and repairing and rebuilding old machines. It is apparent that his son, Clyde, had general authority as a salesman. The contract for the sale of the new machine was entered into March 9, 1907, the order taken by "Clyde J. Bullock, Salesman." When the time came for the exchange, Clyde was sent to the home of plaintiff to obtain the old machine and give his aid in transporting it to the railroad station, in order that it might be shipped to defendant at Norfolk. When he arrived at plaintiff's home, he was informed of plaintiff's possession and what was insisted upon as plantiff's rights, coupled with a refusal to allow the machine to be removed until he was relieved of all liability on the notes and contract which he had signed. The surrender and relinquishment of that possession was essential to the completion of the sale of the new machine to Ulysses. As the evidence now stands, Clyde, evidently intending to represent his father, entered into the agreement that the unpaid notes, representing a part of the purchase price of the old machine, should be taken up and plaintiff's liability thereon terminated. The machine was shipped to defendant, re-

ceived by him, sold (in part at least), the notes were not taken up, and plaintiff paid them. The agency of Clyde is sufficiently shown to have existed in all matters connected with this sale and exchange, and in all matters relating to the sales of machinery, except the single one of his undertaking to protect plaintiff as against the notes referred to, and it is claimed that in that instance he was sent only to assist in the removal of the machine to the station. We do not find in the evidence any suggestion that he gave plaintiff any notice of such a special limitation upon his authority or powers. This evidence was sufficient to have justified the submission to the jury of the questions of the contract of pledge, the possession of plaintiff thereunder, and of the agency of Clyde in making the contract of indemnity.

The measure of plaintiff's damages, in case he is finally successful, is but slightly referred to in the briefs. The theory of the suit by plaintiff is that he should recover all he was required to pay in satisfaction of the notes, with interest thereon. The defendant makes no contention on the measure of damages, but denies all liability. If the contract binding defendant is finally established, it becomes an important question as to whether plaintiff is entitled to recover the full amount paid by him and for which he held a lien on the machine, or whether he should recover only the value of the property which he released. So far as now appears from the evidence, the value of the machine did not equal the amount for which he was held upon the notes. The pleadings might support a judgment for either amount, and it is the opinion of this court, in case of plaintiff's recovery, that he should receive at least the equal of what he has lost by the surrender of the property, which would be its value at the time he relinquished his right.

The judgment of the district court is reversed and the cause is remanded to that court for further proceedings.

REVERSED.