INTERSTATE AIRLINES, INC., APPELLANT, V. THOMAS F. ARNOLD, APPELLEE.

FILED MARCH 16, 1933. No. 28426.

*Byron W. Hunter* and *Gaines, McGilton, McLaughlin & Gaines,* for appellant.

*Crofoot, Fraser, Connolly & Stryker, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

DEAN, J.

This is an appeal from the district court for Douglas county wherein the Interstate Airlines, Inc., plaintiff herein, seeks to recover $1,700 for damages to a Pitcairn aeroplane owned by it and alleged to have been caused by a Stinson aeroplane jointly owned by Thomas F. Arnold and Norman P. Cahow, the defendants. It is alleged that, on the night of January 29, 1931, the plaintiff's aeroplane was parked on the north side of the Rapid Airlines' hangar in Omaha, and the Stinson aeroplane was parked on the south side thereof, and that defendant Cahow attempted to start the motor of the Stinson aeroplane but did not have it under control, and the aeroplane crossed the hangar apron and crashed into the plaintiff's aeroplane, thereby damaging it. It is also alleged that Cahow thereby violated certain department of commerce regulations in that no starting blocks had been placed under the wheels of the aeroplane, and that it was not

in charge of a licensed mechanic or pilot, and that the aeroplane was not equipped for night flying.

Defendant Cahow filed no pleadings, nor did he make any appearance at the trial. At the close of all of the evidence, the court sustained Arnold's motion and dismissed the plaintiff's action against him. The plaintiff has appealed.

The plaintiff contends that the evidence is sufficient to prove the existence of a partnership between the defendants at the time of the accident, and that they are therefore jointly liable, and that the court erred in withdrawing the case from the jury and dismissing the action as against Arnold.

Defendant Arnold denied that he was the owner or in any way responsible for the operation of the Stinson aeroplane at the time of the accident and he denied that Cahow was his agent or partner. He alleged that a conditional sales contract was entered into between them and Lawrence Enzminger, on or about December 11, 1930, whereby the defendants agreed to purchase the Stinson aeroplane from Enzminger, and it is alleged also that the agreement provided that the purchasers should have the right to the use of the aeroplane, but that it was in all instances to be operated by a pilot approved by Enzminger, and that it was agreed and understood therein that the purchasers intended to form a corporation, and to assign their interest in the conditional sales contract to such corporation. And it is alleged that, on or about January 19, 1931, or about ten days before the accident, the contract between Enzminger and the defendants was assigned to the X U Airways, Inc. Arnold denied that he and Cahow had a conversation in respect of purchasing an aeroplane as partners, but he testified that a corporation was to be formed for the handling of the aeroplane, in which he and his wife were to have 50 per cent. of the stock, their son 15 per cent. and Cahow and his wife 35 per cent. of the stock. On March 18, 1931, Arnold, in a written communication signed by him as president

of the X U Airways, Inc., notified the Rapid Airlines, Inc., that the Stinson aeroplane was not to be removed from the hangar by Cahow with any pilot and under any circumstances without the consent of Arnold or his son.

As stated above, Cahow did not appear at the trial, but his deposition discloses that he holds a student's permit to obtain instruction in piloting an aeroplane; that he and Arnold had been acquainted for three years; and that he had assisted Arnold in the sale of cattle owned by the latter. Cahow testified that he desired to purchase an aeroplane for himself, but that, upon the suggestion of Arnold, a larger aeroplane was purchased by both of them in partnership, to be used in transporting farmers to and from sales of cattle and to be used in conveying passengers for hire. Cahow also testified that Arnold paid a certain sum on the purchase price and that it was understood that Cahow would pay an agreed sum at a later date, the money to be derived from passenger flights and from commissions obtained in the sale of cattle.

It appears that both Cahow and Arnold used the aeroplane when a licensed pilot was along, and that a regular account was maintained at the hangar for gas and other incidental expenses and that such account was carried in the name of both defendants. Cahow testified that arrangements for the storage of the aeroplane were made, and that it was understood at the hangar that he was to be manager of the aeroplane in Arnold's absence, and that, at the time of the accident, the government license plate was in the name of both defendants and that no one else had any ownership or interest in the aeroplane.

The pilot who was engaged to fly the Stinson aeroplane testified that arrangements for his services were made by both of the defendants, and that he was instructed by Arnold that Cahow was to be in charge of the aeroplane and that it was to be removed from the hangar only under Cahow's orders. It further appears that, on the night of the accident, two fare-paying passengers had engaged the aeroplane to be transported to Denver, but

the pilot testified that he refused to fly the aeroplane at Cahow's request for the reason that it was not equipped for night flying, and therefore the services of another pilot had been procured for the flight.

Defendant Arnold denied having signed any instrument with Cahow as a partner; and he testified that all of the necessary papers transferring the aeroplane to the X U Airways, Inc., were executed January 19, 1931, before the accident occurred. But he identified his signature on the bottom of a photostatic copy of the transfer of the aeroplane from the defendants to the X U Airways, Inc. This instrument is designated exhibit No. 11, and was excluded from the record under the court's ruling. It is certified therein that the defendants as owners of the aeroplane described "have this date, for value received, sold said aircraft" to the X U Airways, Inc., of Omaha, Nebraska. The instrument is signed by both of the defendants, by "Thomas F. Arnold, Partner," and bears the date of February 19, 1931. We think the court erred in excluding the above exhibit, and that the plaintiff was entitled to have the jury pass on the question as to whether the facts herein are sufficient to warrant a finding that the defendants were partners at the time of the accident and therefore jointly liable for the damage to plaintiff's aeroplane.

The jury, as triers of fact, are the sole judges of the credibility of the witnesses and the effect to be given their testimony, and it was error for the trial court, at the close of all of the evidence, to withdraw the case from the jury and dismiss the action where, as in the present case, disputed questions of fact are involved from which different minds might well draw different conclusions. *Thomson v. Shelton,* 49 Neb. 644; *Kimble v. Roeder,* 115 Neb. 589. It has been well said: "A trial court is not justified in withdrawing a case from a jury and directing a verdict, if there is competent evidence from which the alleged facts may be reasonably inferred." *Oleson v. Oleson,* 90 Neb. 738.

Other assignments of alleged error are pointed out, but, in view of our conclusion, we do not find it necessary to discuss them.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with the views expressed herein.

REVERSED.