**J.E.K. INDUSTRIES, INC., Appellant,**

v.

**Hal G. SHOEMAKER, Appellee.**

**Nos. 84–2037, 84–2082.**

United States Court of Appeals,
Eighth Circuit.

Submitted May 3, 1985.

Decided June 4, 1985.

Rehearing Denied July 18, 1985.

John K. Green, Omaha, Neb., for appellant.

Wallace Hopkins, Omaha, Neb., for appellee.

Before ROSS and BOWMAN, Circuit Judges, and OLIVER,* Senior District Judge.

JOHN W. OLIVER, Senior District Judge.

### I.

This case involves an appeal by the plaintiff and a cross-appeal by the defendant from orders entered by the District Court of Nebraska, The Honorable C. Arlen Beam, presiding, in a jury trial diversity case which returned a verdict for the defendant. Plaintiff J.E.K. Industries, Inc. (hereinafter J.E.K.) brought a replevin action to recover possession of a 47-foot Bluewater cruiser yacht. Defendant Hal C. Shoemaker (hereinafter Shoemaker) filed a counterclaim for damages. As stated, the jury returned a verdict for the defendant. Plaintiff J.E.K. accordingly appealed from the district court's orders of July 11, 1984 denying plaintiff's motion for a new trial.

Plaintiff's motion for a new trial was based upon the primary ground that the jury had not been properly instructed. The district court, in a careful memorandum opinion, candidly stated that "the motion for a new trial should be sustained if decided solely upon the adequacy of the instructions." The district court added, "the court has now concluded, however, that the defendant was entitled to a directed verdict and order of dismissal when such a motion was renewed at the close of all of the evidence." Plaintiff's motion for a new trial was accordingly denied.

Plaintiff J.E.K.'s statement of the issues presented by its appeal, mandated by Rule 25 of Federal Rules of Appellate Procedure and by Rule 8(f)(4) of this Court, identified those issues on appeal as follows: (1) Whether the court erred in refusing to instruct the jury that defendant had the burden to prove by a preponderance of the evidence that he was a purchaser in the ordinary course of business and a good faith purchaser and (2) whether the court erred in concluding plaintiff was not prejudiced because defendant's motion for directed verdict when renewed at the close of all the evidence should have been granted.

We conclude, as did the district court, that our negative answer to the second issue moots the first issue and that the judgment entered for the defendant should be affirmed.

### II.

Defendant Shoemaker's notice of a cross-appeal purported to appeal from an order entered April 18, 1984 dismissing the defendant's counterclaim, from the district court's order overruling defendant's motion for a directed verdict, and from an order entered July 11, 1984 which denied defendant's motion to retax certain costs claimed by the defendant.

Defendant Shoemaker's statement of the issues, however, stated only the following: (1) The trial court erred in sustaining the plaintiff's motion *in limine* concerning the defendant's evidence of incidental and consequential damages as not set forth in the pre-trial order by the defendant and (2) the trial court erred in sustaining taxation of costs by the United States District Court.

Defendant's half-page argument of the first issue stated did not so much as mention any complaint about any action of the district court which may have dismissed defendant's counterclaim. Nor did that argument discuss the district court's alleged failure to grant defendant's motion for a directed verdict. Rather, defendant argued that "[d]efendant should have been allowed to introduce evidence of his special damages to the jury"; that the "exclusion of evidence of Shoemaker incidental and consequential damages limited the evidence with which Shoemaker could present to the jury to explain his damages"; and that the "motion *in limine* should have been overruled."

---

* The Honorable John W. Oliver, Senior United States District Judge for the Western District of Missouri, sitting by designation.

Plaintiff J.E.K. contends that defendant Shoemaker's failure properly to state any issue and the failure to argue any alleged error in regard to the district court's dismissal of defendant's counterclaim must be considered as an abandonment of any claimed error in that regard. We agree and therefore refuse to consider the somewhat confusing record made in regard to the dismissal of defendant Shoemaker's counterclaim.

The well established standards applicable to Rule 28 of the Federal Rules of Appellate Procedure are stated in Section 3974, 16 Wright-Miller-Cooper-Gressman *Federal Practice and Procedure* 421, as follows: "Rule 28(a) mandates that the brief of the appellant contain under appropriate headings and in the order indicated the following sections: ... '*A statement of the issues* presented for review. Such a statement should be carefully drawn.... issues that are not raised in appellant's initial brief at this point will normally not be considered by the court; to assure consideration of an issue by the court, the appellant must both raise it in this 'Statement of the Issues' and pursue it in the 'Argument' portion of the brief, supplementing it with an appropriate factual foundation in the 'Statement of the Case.' "

The same standards apply to Rule 8 of this Court. Indeed, Professor Wright and his co-authors cited *Smith v. American Guild of Variety Artists*, 368 F.2d 511, 514 (8th Cir.1966), to support the statement quoted in the preceding paragraph. *See also Mississippi River Corp. v. FTC*, 454 F.2d 1083, 1093 (8th Cir.1972); *United States v. Campbell*, 524 F.2d 604, 608 (8th Cir.1975); and *Kizzier Chevrolet Co. v. General Motors Corp.*, 705 F.2d 322, 325, n. 2 (8th Cir.1983).

We therefore refuse to consider the first issue stated by defendant J.E.K. on its cross-appeal. In regard to the second issue there stated, we conclude that the trial court did not abuse its discretion in denying defendant's motion to retax the costs for reasons we shall later state.

## III.

Although the case took five days to try, the following factual circumstances were virtually undisputed. Plaintiff J.E.K. is engaged in the business of manufacturing and selling luxury yachts. J.E.K. manufactured the 1982 Model 47-foot sedan Bluewater cruiser yacht pursuant to a sales order placed by Coleman Ford, Inc. d/b/a Coleman Marine (hereinafter Coleman). Coleman was one of plaintiff's biggest dealers and ordered eight to twelve yachts per year at wholesale prices for retail sale to the general public. When Coleman was unable to pay for the yacht, J.E.K. refused to deliver it. The yacht remained on plaintiff's factory premises for the time being.

By letter dated July 9, 1982 defendant offered to purchase the yacht from Coleman for $134,000.00. Defendant agreed to pay $8,000 with the letter, $116,000 when the yacht was ready for shipment, and $10,000 upon its arrival in Sioux City, Iowa, "in good condition and with clear title." All payments were thereafter made as stated in the July 9, 1982 letter.

Plaintiff made various changes on the yacht before it left its plant to meet specifications submitted by Coleman and defendant. At one point defendant asked Robert Ripka, vice president of production for plaintiff who was in charge of delivery of the boat, whether he should make the check out to Coleman and J.E.K. jointly. Ripka told him it was the usual practice for the sale to go through the dealer and instructed him to wire the money to Coleman.

On or about July 16, 1982, plaintiff delivered the yacht to Cim's Marina, Sioux City, Iowa. Coleman had previously given plaintiff an insufficient funds check for another boat. Therefore, Coleman was on a C.O.D. basis with plaintiff. When Ripka was notified by J.E.K.'s truck driver that the yacht was in Sioux City, he contacted Coleman. At 3:00 p.m. on Friday, Coleman advised Ripka that if plaintiff would unload the yacht so that it could be prepared for delivery to the defendant, the money would be wired to J.E.K. by 3:00 on the following

Monday. Ripka authorized delivery on Friday to Coleman's employees at the marina.

Coleman's employees prepared the yacht for delivery to the defendant by mid-afternoon on Saturday. Defendant paid the final $10,000 to Coleman, received a notarized bill of sale, and thereafter took the yacht to Omaha, Nebraska. Defendant did not receive the Manufacturer's Statement of Origin or the Master Carpenter's Certificate to the yacht.

Coleman did not pay plaintiff for the yacht and was discovered to have no funds. No invoices, bills, or demands were ever sent to defendant by plaintiff until an action for replevin was filed six weeks after delivery of the yacht.

## IV.

Our determination that the district court properly concluded that a directed verdict for defendant should have been entered at the close of evidence moots the question of whether the jury instructions may have been erroneous. The district court denied plaintiff's motion for new trial on the ground that the action was governed by Sections 2–403(2) and (3) of the Nebraska Uniform Commercial Code. Those sections read as follows:

> (2) Any entrusting of possession of goods to a merchant for purposes of sale who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.
>
> (3) "Entrusting" includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law.

It is clear that Coleman is a merchant "who deals in goods of that kind," i.e., yachts. It is also clear that plaintiff entrusted the yacht to Coleman. Indeed, the plaintiff concedes in its brief that "the court properly concluded that the Yacht was entrusted for the purpose of sale." Therefore, the only remaining question is whether there was sufficient evidence to go to the jury on the question of whether defendant was a buyer in the ordinary course of business.

Nebraska U.C.C. § 1–201(9) defines a "buyer in ordinary course of business" as "a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind." Nebraska U.C.C. § 1–201(19) defines "good faith" as "honesty in fact in the conduct or transaction concerned."

The ultimate question presented is, as correctly stated by appellant, whether "it would have been error to direct a verdict when the claim involves the issue of whether a party is a good faith purchaser and when evidence is adduced from which reasonable minds could reach different conclusions."

We conclude that no such evidence was adduced and that the district court properly concluded that a directed verdict should have been entered at the close of all the evidence. We therefore affirm the district court's denial of a new trial.

## V.

It is settled law that a "directed verdict is in order only where the evidence points *all one way* and is susceptible of *no* reasonable inferences sustaining the position of the nonmoving party." *Hinkle v. Christensen,* 733 F.2d 74, 77 (8th Cir.1984); *Smith v. Hussman Refrigerator Co.,* 619 F.2d 1229 (8th Cir.), *cert. denied,* 449 U.S. 839, 101 S.Ct. 116, 66 L.Ed.2d 46 (1980). Where the evidence presented allows reasonable men in a fair exercise of their judgment to draw different conclusions the motion for directed verdict should be denied, but the case may be taken from the jury if no rational jury could find against the moving party. *Martin v. White,* 742 F.2d 469, 472 (8th Cir.1984); *Dace v. ACF*

*Industries, Inc.,* 722 F.2d 374, 375 (8th Cir.1983); *Giordano v. Lee,* 434 F.2d 1227, 1231 (8th Cir.1970), *cert. denied,* 403 U.S. 931, 91 S.Ct. 2250, 29 L.Ed.2d 709 (1971).

■ In viewing the evidence the district court was required to view it in the light most favorable to the nonmoving party. That court was required (1) to resolve direct factual conflicts in favor of the non-movant, (2) assume as true all facts supporting the nonmovant which the evidence tended to prove, and (3) to give the non-movant the benefit of all reasonable inferences. *Martin, supra,* 742 F.2d at 472; *Breeding v. Massey,* 378 F.2d 171, 176 (8th Cir.1967).

■ However, a mere scintilla of evidence is insufficient to present a question for the jury. There must be a conflict in the substantial evidence and not merely speculation or conjecture. *Boeing Co. v. Shipman,* 411 F.2d 365, 375 (5th Cir.1969); *Schneider v. Chrysler Motors,* 401 F.2d 549, 555 (8th Cir.1968); *Simpson v. Skelly Oil Co.,* 371 F.2d 563, 568 (8th Cir.1967). Plaintiff is not entitled to unreasonable inferences, "or inferences at war with undisputed facts." *Schneider, supra,* 401 F.2d at 555. The district court properly applied the standards stated to the factual circumstances established by the evidence.

■ For it is clear that plaintiff J.E.K. elected to make its sales through independent dealers such as Coleman and to receive payment from the dealers. Defendant could not deal directly with J.E.K.. Indeed, he was told by Ripka that he should *not* make the checks payable to both J.E.K. and Coleman. J.E.K. knew defendant had already made some payments. J.E.K. entrusted the yacht to Coleman on Friday for delivery to defendant without obtaining any payments. J.E.K. obviously knew that defendant was the purchaser and was providing the purchase price of the yacht. By statute any secret conditions between J.E.K. and Coleman do not alter the fact that the yacht was entrusted for purposes of sale. There was no evidence that defendant knew J.E.K. turned over the yacht for preparation only.

The fact that defendant did not receive the Manufacturer's Statement of Origin or the Master Carpenter's Certificate was not sufficient evidence to find that defendant knew the sale was in violation of J.E.K.'s ownership rights or security interest. No security interest was ever recorded. The district court properly concluded that the missing documents did not present a conflict in the substantial evidence. We agree that such evidence was not sufficient to take the case to the jury. In short, we conclude that the district court properly determined that a directed verdict should have been entered at the close of all the evidence. The district court's denial of plaintiff's motion for a new trial is therefore affirmed.

VI.

■ Defendant's cross-appeal from the order denying defendant's motion to retax costs may not properly be sustained. Defendant sought to have the costs incurred for long distance air-fare for a witness taxed against plaintiff. Under Rule 54(d) of the Federal Rules of Civil Procedure, allocation of costs is within the sound discretion of the trial court and its decision will only be reversed for an abuse of discretion. *Cross v. General Motors Corp.,* 721 F.2d 1152, 1157 (8th Cir.1983); *Linneman Const., Inc. v. Montana-Dakota Utilities Co., Inc.,* 504 F.2d 1365, 1370 (8th Cir.1974).

We conclude that the district court did not abuse its discretion in denying defendant's motion to retax costs. The district court is also affirmed on defendant's cross-appeal.

It is so ordered.