**Ernest C. WILLIAMS, Appellant,**

v.

**A. MENSEY; R. Bordeaux; J. Simmons; V. Vaughn; Armstrong; W. Pecha; St. Louis County; Edward M. Moreland; William Breeding, Appellees.**

No. 84–1753.

United States Court of Appeals, Eighth Circuit.

Submitted April 11, 1985.

Resubmitted Oct. 7, 1985.

Decided March 7, 1986.

■■■

---

Theodore J. MacDonald, Jr., St. Louis, Mo., for appellant.

Eugene Buckley, St. Louis, Mo., for appellees.

Before ROSS and JOHN R. GIBSON, Circuit Judges, and COLLINSON,* District Judge.

ROSS, Circuit Judge.

Ernest C. Williams filed this 42 U.S.C. § 1983 action against St. Louis County and eight employees of the county alleging that he was assaulted on various occasions by fellow inmates and prison guards while he was a pretrial detainee at the St. Louis County Jail. The individual defendants include the Director of Justice Services of the County, Edward Moreland, the Chief of Custody of the Jail, William Breeding, and the Deputy Chief of Custody, Aaron Mensey. The other individual defendants, Arnold Armstrong, Joe Simmons, William Pecha, Vince Vaughn, and Robert Bordeaux, are correctional officers.

Williams appeals from a judgment entered in favor of all of the defendants except Armstrong. He contends that the trial court erred in: (1) granting St. Louis County's motion for a directed verdict, (2) denying his motion to compel St. Louis County to produce the personnel files of the individual defendants, (3) denying his motion for a mistrial based on improper questions propounded by defendants' counsel, and (4) overruling his objections to the introduction of evidence relating to various fights which he had been involved in at the jail. Williams also argues that the damage award of $1.00 against Armstrong is inadequate as a matter of law and that the trial court abused its discretion in setting the amount of attorney fees recoverable from Armstrong at $1,000. After considering Williams' arguments, we affirm the judgment.

## FACTS

Williams arrived at the St. Louis County Jail in January of 1981 and was detained in the jail while awaiting trial for murder. The murder trial was held in December of 1981 and led to Williams' conviction.

Williams instigated this lawsuit by filing a pro se complaint in November of 1981. Thereafter, an attorney who was appointed to represent him (Williams' present counsel) filed a three-count amended complaint.

Count one of Williams' complaint included three allegations of wrongdoing by Arnold Armstrong, a correctional officer at the jail. First, Williams alleged that Armstrong accused him of being a "snitch" (i.e., an informant) in front of other inmates in March of 1981 and at various times throughout his detention in the county jail. This accusation is blamed for certain physical attacks and rude treatment inflicted upon Williams by other inmates between April and September of 1981. Second, Williams alleged that Armstrong watched a group of inmates attack him on September 1, 1981, but did not immediately intervene to stop the beating. Finally, Williams alleged that on September 15, 1981, Armstrong entered his cell and hit him in the face.

Count one of Williams' complaint also included an allegation of wrongdoing by the other correctional officers named in the suit. This allegation involves an incident which occurred on September 2, 1981. Wil-

* The HONORABLE WILLIAM R. COLLINSON, Senior Judge, United States District Court for the Eastern and Western Districts of Missouri, sitting by designation.

liams had been moved out of the general population and into an isolation cell after the September 1, 1981 attack. The next day he was informed that he would be moved back to a cell in the general population. When he refused to move, several correctional officers (Simmons, Pecha, Vaughn, and Bordeaux) attempted to physically remove him from the isolation cell. Williams alleges that *after* the officers had restrained him, Simmons punched him in the right eye with sufficient force to knock his head into the concrete wall of his cell.

Count two of Williams' complaint, which basically reasserted the facts in count one by reference, was abandoned at the end of trial. Count three of Williams' complaint sought recovery for the defendants' alleged failure to give adequate medical attention to the eye and head injuries which he incurred in the September 2nd struggle.

During pretrial discovery, Williams filed a motion to compel St. Louis County to produce the personnel files of the individual defendants (except Moreland and Breeding). *See* FED.R.CIV.P. 34. The court ordered the personnel files delivered under seal for purposes of an in camera inspection. After an in camera inspection, the court decided to deny Williams' motion since the information in the files would not be admissible at trial and would not reasonably lead to the discovery of admissible evidence. *See* FED.R.CIV.P. 26(b)(1) (scope of discovery). The court later rejected Williams' motion to seal the files in the record in order to preserve the issue for appeal.

The case then proceeded to trial. At the close of all the evidence, the court granted St. Louis County's motion for a directed verdict. The court then submitted special verdict forms to the jury. After deliberating, the jury found Armstrong liable on count one of Williams' complaint and awarded damages of $1.00, but returned a defendants' verdict in all other respects.

Subsequently, Williams' request for attorney fees was denied by the district court due to his limited success. This denial was reversed by order of this court on February 23, 1984, and remanded for reconsideration in light of the *en banc* decision in *Fast v. School District of Ladue*, 728 F.2d 1030 (8th Cir.1984). On remand, the district court granted attorney fees in the amount of $1,000.

After hearing oral argument on this appeal, we entered an order requesting the trial court to conduct another in camera examination of the personnel files requested by Williams. The order stated: "The court should determine whether these files contain the same material as when the court first examined them, and make a record of any such omissions or additions. The court should then forward this record, along with the files, or a copy of the files, to this court, under seal, so that we may grant an informed appellate review of Williams' case." *Williams v. Mensey*, No. 84–1753, slip op. at 2 (8th Cir. May 10, 1985). We also asked the trial court "to reconsider the amount of attorney's fees which it awarded and to articulate reasons for the amount of the fee award which it determines that Williams is entitled to." *Id.*

By an order entered on October 7, 1985, the trial court complied with our request. The court provided this court with photocopies of the personnel files and informed us that the files contained the same material, except for certain noted additions, as when originally reviewed. The court also reiterated its view that a $1,000 attorney fee award was reasonable and articulated reasons for setting the award at this amount.

With these preliminaries concluded, Williams' claims are ready for our review.

## DISCUSSION

### 1. County Liability

■ As a local governmental unit, St. Louis County is not "wholly immune from suit under § 1983." *Monell v. Department of Social Services*, 436 U.S. 658, 663, 98 S.Ct. 2018, 2021, 56 L.Ed.2d 611 (1978). However, the county cannot be liable *"solely* because it employs a tortfeasor—or, in other words * * * [it] cannot be held liable under § 1983 on a *respondeat superior*

theory." *Id.* at 691, 98 S.Ct. at 2036. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. at 2037.

The issue before us is whether Williams submitted sufficient evidence to support a finding that the alleged wrongful acts of the individual defendants in this case were taken pursuant to a policy or custom attributable to St. Louis County. Because this issue was raised on the County's motion for a directed verdict, the trial court, and this court, must:

> (1) resolve direct factual conflicts in favor of the nonmovant, (2) assume as true all facts supporting the nonmovant which the evidence tended to prove, (3) give the nonmovant the benefit of all reasonable inferences, and (4) deny the motion [or, for our purposes, reverse the directed verdict] if the evidence so viewed would allow reasonable jurors to differ as to the conclusions that could be drawn.

*Martin v. White,* 742 F.2d 469, 472 (8th Cir.1984) (*quoting Dace v. ACF Industries, Inc.,* 722 F.2d 374, 375 (8th Cir.1983)). "However, a mere scintilla of evidence is insufficient to present a question for the jury" and the movant "is not entitled to unreasonable inferences, 'or inferences at war with undisputed facts.'" *J.E.K. Industries, Inc. v. Shoemaker,* 763 F.2d 348, 353 (8th Cir.1985) (*quoting Schneider v. Chrysler Motors,* 401 F.2d 549, 555 (8th Cir.1968)).

Williams contends that St. Louis County had a policy or custom of inadequately supervising its personnel, of failing to remedy known unconstitutional conduct, *see Herrera v. Valentine,* 653 F.2d 1220, 1224 (8th Cir.1981), and of placing and maintaining inmates in the general population even when it was clear that isolation from the other inmates was required for safety reasons. Williams submitted no independent evidence concerning such policies or customs. Instead, he argues that evidence relating to his treatment in the jail is sufficient to support an inference that the county maintained such policies or customs. Specifically, Williams' contention that St. Louis County had a policy or custom of inadequate supervision and of failing to remedy known unconstitutional conduct is premised on his testimony that defendant Armstrong labeled him a "snitch", watched other inmates beat him on September 1, 1981, hit him in the face on September 15, 1981, and that several correctional officers used excessive force to restrain him on September 2, 1981. Williams' contention that the county had a policy or custom of ignoring the risks prisoners face in the general population is premised on his testimony that he was not placed in isolation until September 1, 1981. By this time, Williams testified, he had been attacked on several occasions. Nevertheless, he was ordered out of isolation on the next day by the Chief Social Worker at the jail, Kay Brown, because some ill prisoners needed to use his isolation cell.

The Supreme Court recently discussed an analogous situation in *City of Oklahoma City v. Tuttle,* —— U.S. ——, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). *Tuttle* involved the fatal shooting of an individual by a police officer employed by Oklahoma City. Little dispute existed over the Court's holding that it was improper to permit a jury to infer the existence of a municipal policy or custom solely from proof of the officer's conduct, no matter how egregious the conduct may have been. The Court was divided, however, over the rationale for the holding. The plurality opinion, written by Justice Rehnquist and joined by three other justices, included the following reasoning:

> Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved. But where the policy

relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the "policy" and the constitutional deprivation.

*Id.* at ——, 105 S.Ct. at 2436 (footnotes omitted). The concurring opinion, written by Justice Brennan, was joined by two other justices. The concurring members of the Court chose a more limited explanation for the Court's holding, stating simply:

> [W]ithout some evidence of municipal policy or custom independent of the police officer's misconduct, there is no way of knowing whether the city is at fault. To infer the existence of a city policy from the isolated misconduct of a single, low-level officer, and then to hold the city liable on the basis of that policy, would amount to permitting precisely the theory of strict *respondeat superior* liability rejected in *Monell.*
>
> \* \* \* \* \* \*
>
> [T]here may be many ways of proving the existence of a municipal policy or custom that can cause a deprivation of a constitutional right, but the scope of § 1983 liability does not permit such liability to be imposed merely on evidence of the wrongful actions of a single city employee not authorized to make city policy.

*Id.* at ——, 105 S.Ct. at 2440 & 2441 (Brennan, J., concurring) (footnotes omitted).

■ It is clear from *Tuttle* that Williams' evidence failed to establish that St. Louis County maintained the alleged policies and customs. First, the correctional officers in this case were not shown to have authority to make policy decisions for the county and no evidence was submitted regarding acts of misconduct by these officers other than the acts of misconduct alleged in this case. Reading the evidence in the light most favorable to Williams, it would be unreasonable to infer that the acts of the correctional officers were attributable to a policy of inadequate supervision or of inadequately remedying known un-

constitutional conduct. Second, although it may be inferred that Kay Brown had authority to make policy decisions on inmate assignment matters, her September 2nd order to move Williams out of isolation constituted only a single incident which was not shown to be caused by an existing unconstitutional policy. *Id.* at ——, 105 S.Ct. at 2436. Regardless, the directed verdict was proper on this matter because the correctional officers' alleged misconduct in carrying out Brown's order, not the order itself, was the cause of the constitutional deprivation which was alleged to have occurred in this case.

### 2. Production of Personnel Files

We have obtained and examined the personnel files which Williams sought to obtain prior to trial. These files contain the following types of materials: performance evaluations, certificates of training courses completed, internal letters of commendation and reprimand, injury reports, vacation and sick leave records, and employment applications.

Williams claims that the district court's denial of his motion to compel production of these personnel files was erroneous and prevented him from establishing that St. Louis County was, or should have been, aware of misconduct by the correctional officers named in this case. This, he claims, accounts for his failure to show that the County had a policy or custom of permitting such misconduct.

■ "We accord the district court wide discretion in its handling of discovery matters and its decisions will be upheld 'unless, in the totality of the circumstances, its rulings are seen to be a gross abuse of discretion resulting in fundamental unfairness in the trial of the case.'" *O'Neal v. Riceland Foods,* 684 F.2d 577, 581 (8th Cir.1982) (*quoting Voegeli v. Lewis,* 568 F.2d 89, 96 (8th Cir.1977)). After reviewing the personnel files, we find that the district court did not abuse its discretion in denying the motion to produce. Most of the materials in the files were nondiscover-

able or irrelevant and some of the information in the files was obtained through other means. Further, there were no records in the files relating to the use of excessive force or other similar misconduct by the defendant correctional officers.

### 3. Mistrial

Williams' murder trial was held prior to the trial of this § 1983 action. On cross-examination in this case, defendants' attorney asked Williams the following questions:

> Q Now, Mr. Williams, you indicated that Armstrong told people you were a snitch and that you took exception to that because, I guess you claim it is not true, is that right?
>
> A Yes, sir. It's not true.
>
> Q Well, in connection with your claim that it's not true, didn't in connection with this murder trial you had accuse [sic] your own brother of being the one who killed this victim?

Trial Transcript 1–70. Williams' counsel objected to the latter question and moved for a mistrial on the grounds that the question needlessly brought up the fact that Williams had been charged and convicted of murder, unfairly impeached his brother, Darnell Williams, who later served as a witness,[1] and was irrelevant. The court sustained the objection, but denied the motion for a mistrial. Williams now claims that the court erred in denying the motion.

■ Improper questioning by counsel "generally entitles the aggrieved party to a new trial" if such questioning "conveys improper information to the jury and * * * prejudices the opposing litigant." *Harris v. Zurich Insurance Co.,* 527 F.2d 528, 531 (8th Cir.1975). "However the trial court is, of necessity, clothed with a great deal of discretion in determining whether an objectionable question is so prejudicial as to require a retrial" because "[t]he trial court is in a far better position to measure the effect of an improper question on the jury than an appellate court which reviews only the cold record." *Id. See also United States v. Mooney,* 769 F.2d 496, 498 (8th Cir.1985) (abuse of discretion standard).

■ Our review of the record indicates that the question was clearly improper, but that the trial court did not abuse its discretion in denying the motion for a mistrial. First, the fact that Williams had been convicted of murder had been previously elicited by Williams himself. It was improper to raise this fact again, but the question was not clearly prejudicial due to the cumulative nature of the conviction information. Second, any impeaching effect which the question may have had on Darnell Williams as a witness was not so prejudicial as to require a mistrial. The nature of Darnell's testimony required that he disclose that he had been an inmate at the county jail. *See* footnote 1. The further disclosure that he had been accused of committing a murder by his brother Ernest did not unduly impeach him since the jury knew that Ernest, not Darnell, had been convicted of this murder. Finally, the statement that Williams had accused his brother of committing the murder was irrelevant and would have a tendency to impeach Williams' character. By denying Williams' motion for a mistrial, however, the district court impliedly made a determination that the statement was not so prejudicial to Williams' case as to require a mistrial. We find no abuse of discretion in this determination.

This is not to say, however, that we condone the defendants' attorney's question. We do not. We merely hold that no reversible error exists.

### 4. Evidence of Other Fights

On cross-examination, defendants' counsel asked Williams the following question: "Now, even before April when you say this problem began because of what you say was due to Armstrong [labeling you a "snitch"], were you involved in fights, say, in February of 1981?". Trial Transcript

---

1. Darnell Williams' testimony centered on the fact that he had been incarcerated at the St. Louis County Jail in July or August of 1981 and had overheard defendant Armstrong tell one of the other inmates that he was the "snitch's brother".

1–49. Williams objected on the ground that the question violated FED.R.EVID. 404(b). The trial court overruled the objection but advised defendants' counsel to limit the number of questions dealing with fights prior to April of 1981. Defendants' counsel then asked Williams about two specific fights prior to April of 1981. Williams now contends that the trial court erred in overruling his objection.

"Evidence of other crimes, wrongs or acts is not admissible to prove character, but it may 'be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" *United States v. Gomez*, 733 F.2d 69, 71–72 (8th Cir.1984) (*quoting* FED.R.EVID. 404(b)). We have previously determined that

> [a] trial judge acts within his sound discretion in admitting evidence of prior wrongful acts when (1) the evidence is relevant to an issue in question other than that of the character of the defendant, (2) there is clear and convincing evidence that the defendant committed the prior acts, and (3) the potential unfair prejudice of the evidence does not substantially outweigh its probative value.

*United States v. Gilmore*, 730 F.2d 550, 554 (8th Cir.1984). In addition, "[b]road discretion is afforded the trial judge in deciding whether to admit wrongful act evidence and his decision will not be overturned absent a clear showing that the requirements have not been met." *Id.*

**[6]** The defendants claim that the evidence of other fights was offered to show that Williams' problems with other inmates started before Armstrong allegedly labeled him a "snitch". As such, the questioning was not intended to show conformance with bad character, but rather, was intended to show that Armstrong's alleged labeling of Williams as a "snitch" was not the cause of Williams' problems with other inmates. We consider this an accurate characterization of the questioning and find that the trial court did not abuse its discretion in permitting the questioning over a FED.R.EVID. 404(b) objection.

In relation to the evidence of other fights, Williams also discusses the fact that defendants' counsel was holding certain documents while conducting his cross-examination of Williams. Williams' objection to the question dealing with other fights contended that these documents were actually inadmissible prison investigation records. The objection asserted that, in questioning Williams, defendants' counsel was effectively reading from the prison records about events which he knew were not true or could not be proven true.

It is a well settled rule that counsel may not make assertions of fact in the form of questions to a witness which he knows are not otherwise properly admissible in court. As stated in Wigmore's treatise on evidence:

> (2) The same general principle governs the *putting of questions to witnesses.* The jury may under certain circumstances obtain an impression, from the mere putting of illegal questions which are either answered in the negative or are not answered because illegal and excluded, that there is some basis of truth for the question. When a counsel puts such a question, believing that it will be excluded for illegality or will be negatived, and also having no reason to believe that there is a foundation of truth for it, he violates professional honor. It is generally agreed that where the counsel has been warned by a prior successful objection of the opponent to similar evidence that it is illegal, he will be prevented from again putting questions dealing with the class of facts affected by the same illegality.

6 J. Wigmore, *Evidence* § 1808 at 371 (J. Chadbourn rev. ed. 1976) (emphasis in original, footnote omitted). *See United States v. Harding*, 525 F.2d 84, 91 n. 17 (7th Cir.1975). *See also* Model Rules of Professional Conduct Rule 3.4(e) (1983) ("A lawyer shall not: * * * in trial, allude to any matter * * * that will not be supported by admissible evidence"); Model Rules of Pro-

fessional Responsibility DR 7–106(c)(1) (1980) (same). In this case, however, the record does not establish that the facts asserted in defendants' counsel's questioning relating to instances of other fights were known to be false or not properly admissible in court.

We observe that it might have been proper for the trial court to order defendants' counsel to not hold the disputed documents during his cross-examination. *See* FED.R. EVID. 611(a)(1) ("The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to * * * make the interrogation and presentation effective for the ascertainment of the truth"). *See also United States v. Bennett,* 702 F.2d 833, 836 (9th Cir.1983) ("It was justifiable for the trial judge to reprimand defense counsel for holding a document in his hand during cross-examination in a way designed to suggest that it was a report he was reading from, where he had been told in a prior sidebar conference to avoid precisely this tactic"). "Since the law places the responsibility for the trial of cases in the hands of the trial judge, [however,] a large degree of discretion is essential in the conduct of that trial within a broadly defined framework. Among other things, the trial court ha[s] discretion on * * * the conduct of trial counsel * * * and the order and proper presentation of the evidence * * *." *Skogen v. Dow Chemical Co.,* 375 F.2d 692, 704 (8th Cir.1967). No abuse of discretion occurred in this case.

### 5. Damage Award

■ At trial, Williams testified that he suffered recurring headaches, back pain,

and blurred vision as a result of the beatings from the other inmates and prison guards. After trial, he filed a motion seeking a new trial against Armstrong on the issue of damages on the basis that the jury's award of only $1.00 was inadequate as a matter of law. This motion was denied by the trial court.

On appeal, our review of Williams' claim that the award was inadequate is circumscribed, as

> inadequacy or excessiveness of a verdict is basically, and should be, a matter for the trial court which has had the benefit of hearing the testimony and of observing the demeanor of the witnesses and which knows the community and its standards; that this is a responsibility which, for better working of the judicial process and for other seemingly obvious reasons, is best placed upon its shoulders; * * * we shall continue to consider review, as we have said before, not routinely and in every case, but only in those rare situations where we are pressed to conclude that there is "plain injustice" or a "monstrous" or "shocking" result.

*Taken Alive v. Litzau,* 551 F.2d 196, 198 (8th Cir.1977) (*quoting Solomon Dehydrating Co. v. Guyton,* 294 F.2d 439, 447–48 (8th Cir.), *cert. denied,* 368 U.S. 929, 82 S.Ct. 366, 7 L.Ed.2d 192 (1961). Our review of the record convinces us that the award of only nominal damages is not plainly unjust or a monstrous or shocking result in this case.

### 6. Attorney Fees

■ Williams contends that the attorney fees award of $1,000 is inadequate. On remand,[2] the district court reaffirmed its

2. Williams had argued that the district court failed to give an adequate explanation of its reasons for the fee award. We agreed and added the following to our May 10, 1985 order:

Also, we request the court to reconsider the amount of attorney's fees which it awarded and to articulate reasons for the amount of the fee award which it determines that Williams is entitled to. *See Hensley v. Eckerhart,* [461 U.S. 424] 103 S.Ct. 1933, 1941 [76 L.Ed.2d 40] (1983) ("the district court has discretion in determining the amount of a fee award. * * * It remains important, however,

for the district court to provide a concise but clear explanation of its reasons for the fee award.") *See also Hardman v. Board of Education of Dollarway, Arkansas School District,* 714 F.2d 823, 825 (8th Cir.1983); *Freeman v. Franzen,* 695 F.2d 485, 494 (7th Cir.1982), *cert. denied,* [463 U.S. 1214] 103 S.Ct. 3553 [77 L.Ed.2d 1400] (1983). In making this determination the court may find the following post-*Hensley v. Eckerhart* decisions dealing with fee awards where the plaintiff has obtained comparatively low recoveries, or suc-

position that Williams was entitled to attorney fees in the amount of only $1,000 rather than the $10,493.63 requested. The court explained that Williams had "prepared for trial with respect to two separate causes of action [counts 1 and 3] against each of the nine defendants" and that "[t]he records of the work done as set out in the time sheets of [Williams'] attorney reveal substantial amounts of work done in preparation for trial against * * * defendants who [either] received a defendants' verdict as to both counts * * * [or were] directed out at the close of [Williams'] case." *Williams v. Mensey*, No. 81-1379C(5), slip op. at 5 (E.D.Mo. Oct. 7, 1985) (order on remand). The court also observed that on the one claim which Williams did prevail, the jury awarded damages of only $1.00.

In *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Court concluded that "where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Id.* at 440, 103 S.Ct. at 1943. We find that the district court did not abuse its discretion in determining that a $1,000 fee award was reasonable.

Accordingly, we affirm.

cess on only limited issues, to be helpful: *Easley v. Empire Inc.*, No. 84–1305, slip op. at 15–18 (8th Cir. March 20, 1985); *Williams v. Butler*, 746 F.2d 431, 443 (8th Cir.1984), *reh'g en banc granted*, Nos. 83–2534 and 83–2641 (December 5, 1984); *Rosebrough Monument Co. v. Memorial Park Cemetary Association*, 736 F.2d 441, 446 (8th Cir.), *cert. denied*, [— U.S. —] 105 S.Ct. 385 [83 L.Ed.2d 320] (1984); *Tusa v. Omaha Auto Auction Inc.*, 712 F.2d 1248, 1254–56 (8th Cir.1983). *See also Taylor v. Jones*, 653 F.2d 1193, 1205–06 & n. 12 (8th Cir.1981).

*Williams v. Mensey*, No. 84–1753, slip op. at 2–3 (8th Cir. May 10, 1985). After our order was filed, the *Easley* case was published, *see* 757 F.2d 923, 931–32, and the *Williams* case was considered *en banc*, *see* 762 F.2d 73.