CYNTHIA A. CARSON, APPELLEE, V. HOWARD GREELEY
ET AL., APPELLANTS.

FILED FEBRUARY 16, 1922.    No. 21465.

1. **Judgment:** ACTION FOR RESCISSION: DISMISSAL WITHOUT PREJ-
UDICE. When a suit is begun for the rescission of a contract
on the ground of fraud, the plaintiff may dismiss her action with-
out prejudice, and begin an action at law to recover damages for
the perpetration of the fraud under facts which are not incon-
sistent with the facts in the former action, and no estoppel is
worked thereby, where the plaintiff has acquired no benefit in
the former action and no detriment has been caused to the de-
fendant in such action.

2. **Election of Remedies:** MOTION TO DISMISS: PARTIES. In an
action to rescind a contract on the ground of fraud, G. and
his wife were made parties defendant. The action was sub-
sequently dismissed without prejudice by plaintiff and an action
at law to recover for the damages pleaded in the former action
was subsequently commenced by her against G. and his son.
A motion to dismiss the action on the ground that the former
action was an election of remedies and was therefore a bar to
the second action was overruled. *Held*, that the court did not
err in overruling the motion on the ground, among others, that
the parties in both actions were not the same.

3. **Limitation of Actions:** FRAUD: RESCISSION. A contract for an
exchange of lands was entered into between plaintiff and de-
fendants, the former a widow of 57 years and wholly inexperi-
enced in business affairs. The jury found that defendants made
false and fraudulent respresentations to her, which she believed
and relied and acted upon, whereby she was defrauded. By their
representations and conduct and their treatment of the plaintiff
generally after the exchange was made she was lulled into a
sense of security. Subsequently she discovered the fraud and,
within the time after such discovery which is permitted by the
statute of limitations, she began this action. *Held*, that the
action was not barred.

4. **Appeal:** CONFLICTING EVIDENCE. When questions of fact are sub-
mitted to the jury without objection in respect of the theory on
which the case appears to have been tried, the verdict will not
be disturbed, even though the evidence conflicts, if there is
sufficient evidence to support it.

Carson v. Greeley.

5. ———: Review. The record examined, and *held* that reversible
error has not been shown.

Appeal from the district court for Saunders county:
George F. Corcoran, Judge. *Affirmed.*

*J. A. Donohoe, H. A. Bryant* and *Sullivan, Wright &
Thummel,* for appellants.

*William L. Dowling, contra.*

Heard before Morrissey, C. J., Letton, Rose, Dean,
Aldrich, Day and Flansburg, JJ.

Dean, J.

Plaintiff began this action November 15, 1918, in
Saunders county, to recover the alleged value of her
equity in a 160-acre farm on which she formerly lived
with her family in Stanton county and of which she al-
leges she was defrauded by defendants in the exchange
of her farm for a 960-acre tract of land, in Holt county,
owned by defendant Peter Greeley. Peter Greeley's son,
Howard, who is co-defendant with his father in the
present case, assisted his father in conducting the negotia-
tions between the parties. Besides being defrauded of
her farm plaintiff pleaded that defendants were indebted
to her for the value of certain permanent improvements
placed by her on the Holt county land, approximating
$1,000 in value, while it was in her possession. Plain-
tiff recovered a verdict for $14,651.70. Subsequently,
under the court's order, she filed a remittitur in the sum
of $633.80. Judgment was thereupon rendered against
defendants for $14,017.90, from which they appealed.

Defendants' answer denied all the material allegations
of plaintiff respecting representations of fraud, deceit,
and the like, and alleged that plaintiff by a former suit
for rescission of the contract, which was dismissed with-
out prejudice before this action was begun, had made
her election as between inconsistent remedies and that
she could not now maintain this action for damages grow-
ing out of the contract. They further alleged that plain-

tiff's action was barred by the statute of limitations, and further that she was estopped from maintaining her action by reason of her own negligence in failing to make timely inquiry and examination with respect to the quality of the 960-acre tract of which she complained in her petition.

The record discloses these material facts: A written contract for the exchange of the respective properties was made by the parties October 13, 1913. In the contract the value of Mrs. Carson's Stanton county farm was fixed at $14,400, less an incumbrance of $4,500, and Mr. Greeley's Holt county tract at $38,500. When the contract was executed plaintiff gave to defendant a mortgage for $28,600 on the Holt county land, drawing annual interest at the rate of 5 per cent. The mortgage was given to secure the payment to Peter Greeley of the remainder of the unpaid purchase price on the 960-acre tract over and above the agreed value of her interest in her Stanton county farm which she conveyed to Greeley. Shortly after the contract was executed the parties respectively went into possession of their newly acquired properties. In May, 1915, only $400 of the annual interest charge of $1,430 having been paid by Mrs. Carson, Mr. Greeley began an action to foreclose his mortgage. In the foreclosure suit Mrs. Carson filed a disclaimer of any interest in the land there involved and tendered a deed of conveyance to Greeley.

About a month after the foreclosure action was begun, namely, in June, 1915, plaintiff, who had been living on the Holt county tract with her family for a little more than a year, namely, from October, 1913, moved away and, June 15, 1915, she began an action in Stanton county for a rescission of the contract on the ground of fraud. In that suit she also tendered to Greeley a deed of conveyance of the Holt county land, and prayed that the contract, the deed to the Stanton county farm and the mortgage given by her on the Holt county land be declared null and void and that the title to the Stanton

county farm be quieted in her. In the Stanton county action, Mrs. Carson obtained an order restraining Greeley from proceeding with his foreclosure action in Holt county, to prevent a multiplicity of suits, as alleged, and to the end that all of the matters in dispute between them might be settled in one action. Issues were joined and the case remained, untried and undetermined, on the Stanton county docket until July 8, 1916, when her action was dismissed without prejudice. It may here be noted that, in her Stanton county suit, only Peter Greeley and his wife were named as parties defendant.

Subsequently, November 15, 1918, after the dismissal of the Stanton county suit, Mrs. Carson brought this action in Saunders county against Peter Greeley and his son, Howard, defendants herein. Mrs. Greeley was not made a party to this action.

In the present suit plaintiff alleged generally that defendants falsely and fraudulently represented to her that the 960-acre tract was all good tillable land, when in fact only about 200 acres could at all be farmed, and that they showed to her only the best of the land to induce her to make the trade; that the soil was good and had a subsoil of clay formation, and that it was not underlaid with gravel or sand, which was untrue; that for more than 20 years past it had produced an average of from 35 to 40 bushels of corn and oats to the acre and other grains in like proportion, which was a gross misstatement of fact; that the hay land produced a ton to the acre, when in fact it would not produce half a ton; that the land could easily be divided into quarter-section farms, each one a tillable farm in itself, which was impractical and impossible because it was mostly unproductive and unsuitable for farming purposes; that the farm was equipped with an irrigation project consisting of two artificial lakes, stocked with fish, and ditches capable of irrigating 100 acres, all of which was untrue, and when in fact not to exceed five acres could be irrigated; that there was a growing orchard of about 20 acres producing $2,000

worth of fruit a year, when in fact it did not contain 20 acres and the quantity of fruit produced in any year was almost negligible.  Plaintiff charged that all and singular of the representations made by the defendants with respect to the desirability and the good quality of the Holt county tract of land, its productivity, and the like, were falsely and fraudulently made by them with the intent on their part and for the sole purpose of deceiving, cheating and defrauding her.  She further pleaded that she relied upon all of the representations made by the defendants to her and believed that they were true and acted thereon.

The evidence introduced on the part of Mrs. Carson tends strongly to corroborate the material allegations of her petition.  On the part of defendants the material testimony offered by Mrs. Carson was denied, and with respect to the value of the Holt county land evidence was introduced tending to prove that its value was much greater than that placed thereon by plaintiff.  However, these questions of fact were decided by the jury adversely to defendants' contention and, we may here observe, there is evidence to support the verdict, so that the questions that remain for determination are questions of law solely.

Defendants argue that, nothwithstanding plaintiff's action to rescind was dismissed, without prejudice, before this action was begun, she is estopped from maintaining her present suit because she had already elected her remedy and could not now elect another.  In support of their argument on the question of election of remedies defendants cite *First Nat. Bank v. McKinney,* 47 Neb. 149.  That was an action brought for the rescission of a contract for the sale of a stock of goods while at the same time a law action was pending, and of course undetermined, which had been brought to recover the purchase price of the same goods.  It was there held that the remedies, in equity and at law, were not concurrent.  The *McKinney* case is not controlling here be-

cause plaintiff, in the present case, abandoned her action in equity before she began this action. On the question of election, in view of the facts and the law, we conclude that the argument of defendant is not tenable. We note, however, that the authorities are divided on this ques· tion.

On other grounds, too, defendants' argument is not tenable. In the present case the equity action did not change the status of the parties on the merits. The better and more reasonable rule is that no estoppel is worked where the plaintiff has acquired no benefit by bringing an action to rescind and no detriment has been caused to the other party thereby. 9 R. C. L. 960, sec. 7. Nor are the facts which are pleaded in the present case inconsistent with the facts pleaded in the former action.

In *Register v. Carmichael*, 169 Ala. 588, 34 L. R. A. n. s. 309, this rule is announced: "But an election, to be conclusive, must be efficacious to some extent at least. The mere bringing of a suit is not determinative of the right. The party against whom the estoppel is pleaded must have received some benefit under his election." The note to the *Register* case, beginning at page 309 (34 L. R. A.) collates the authorities for and against the rule there announced, and points out that the clear weight of authority, though there is some conflict in the decisions, seems to sustain the position taken by the court in that case.

*Kehoe v. Patton*, 21 R. I. 223, holds that the mere bringing of a suit in equity, without proceeding to a final decree, was not in itself an election of remedies.

In *Howe v. Martin*, 23 Okla. 561, it is said: "A person induced by false and fraudulent representations to purchase or exchange for property has three remedies. He may, first, upon discovery of the fraud, rescind the contract absolutely, and sue in an action at law, and recover the consideration parted with upon the fraudulent contract, and in such a case he must restore, or offer to restore, to the parties sued whatever he has received by

virtue of the contract; or, second, he may bring an action in equity to rescind the contract, and in such a case it is sufficient for plaintiff to restore, or make offer in his position to restore, everything of value which he has received under the contract; or, third, he may affirm the contract, retain that which he has received, and bring an action at law to recover the damages sustained by reason of his reliance upon the fraudulent representations."

In view of the record before us, and in view of the law, neither as a matter of justice nor as a matter of law should the fact alone that Mrs. Carson began an action in equity, which was subsequently dismissed under the facts herein discussed, deprive her of her legal remedy for damages which were occasioned by the fraud which she charges was prepetrated by the defendants. Mrs. Carson had more than one remedy, and the position which she took in the equity action which was subsequently dismissed did not estop her from later asserting the same and additional relevant facts, not inconsistent with the former action, against the same defendant and his agent who was made a co-defendant in the present case.

Defendants' argument that Mrs. Carson cannot maintain this action is not well founded for another reason. The parties defendant in the equity action, as hereinbefore pointed out, are not the same as the parties defendant in the present law action. *Estes v. Worthington,* 30 Fed. 465, is a suit where a plea averring the pendency of another suit was overruled because it was not shown that the second suit was "between all the same parties." To substantially the same effect is *Pullman Co. v. Hoyle,* 52 Tex. Civ. App. 534; 1 C. J. 53, sec. 59.

Clearly the equities, in the broadest sense, are with the plaintiff. When this suit was begun Peter Greeley had foreclosed the mortgage on the Holt county land, upon which Mrs. Carson had placed about $1,000 worth of improvements, as the proof shows, and bought it in for

about $3,500 less than the mortgage given to him by Mrs. Carson. He had also sold her Stanton county land to an alleged innocent purchaser. In fact, as charged by counsel, Greeley recovered all the land which he sold to Mrs. Carson, together with the improvements placed thereon by her, and he acquired and sold her Stanton county farm besides. So that, by virtue of her transactions with the Greeleys, it plainly appears that Mrs. Carson lost her Stanton county farm and, so far as the present record discloses, she and her family, a part of them minor dependents, were left penniless.

When the contract was entered into Mrs. Carson was 57 years of age. She had then been a widow about four years. Her family, residing with her at the time, consisted of four boys and two girls, the eldest, a youth named David, had just turned 21. Aside from working on his mother's farm David never had any business experience. The proof shows that he never bought nor sold a piece of land. Mrs. Carson and her children lived on the Stanton county farm for many years, all of her children having been born there. In passing it may be noted that defendants alleged generally in their answer that plaintiff relied on her own judgment and that of her son David when she made the trade.

David testified that he received a letter from a real estate man in Holt county inviting him to come and view the lands which he offered for sale, and, among them, on a printed slip in evidence, was listed the Peter Greeley tract. Pursuant to the agent's solicitation he went to Holt county and there he met Howard Greeley, who was the personal representative and agent of his father. While there Howard arranged with David to meet him, either at Pilger or Stanton and take him out to see his mother's farm with the view of making the trade. After two or more interviews with Mrs. Carson at her home, in which Peter Greeley, who came with his son on the final visit, took an actively effective part, the trade was made and the contract was executed.

Mrs. Carson testified that she knew nothing about farm lands or the quality of soils and that she so informed the Greeleys. She further testified that she believed and relied and acted upon the representations the defendants made to her with respect to the quality and value of the Holt county tract, its productivity, and the like, and that she so informed them. She also testified that in reliance thereon she entered into the contract. She testified, further, that Peter Greeley urged her to leave her Stanton county farm, apparently that he might come into its possession, and move up to the Holt county place, which she did, just as soon as the contract was signed. She said that he promised her that he would arrange to have his Holt county neighbors go with teams to the railroad town and move them over to the place. David testified that when Howard Greeley was at their home he, David, proposed that they should go to the bank at Pilger, where they transacted their business, and have the contract written there, but that Howard objected, saying that it would be better to go to some town or place where none of the parties were known because the Pilger bank might object to the trade and spoil the deal. They did not go to Pilger, but to Wisner.

It is in evidence that Peter Greeley, after Mrs. Carson moved upon the 960-acre tract, persuaded her into the belief that she had made a great bargain; that it could be divided into farms and she could in that way have a farm for each son; that he told her he had sold the land to her for less than it was worth, and that the farm was better than it looked. Without going more into detail, it sufficiently appears that the Greeleys, one or both, lulled Mrs. Carson into a sense of security, and that in reliance upon the assurances so made she continued to remain on the place.

Defendants' argument that the statute of limitations has barred the present action cannot be sustained. Section 7569, Rev. St. 1913, provides that a cause of action based on fraud shall not be deemed to have accrued until

the discovery of the fraud. There is proof that Mrs. Carson did not discover the fraud until after Peter Greeley began his foreclosure action, when she consulted eminent counsel, by whom she was informed that she had been swindled. The record shows that after she discovered the fraud she began her action before it was barred.

Defendants contend that Mrs. Carson was negligent in two respects, namely, that she did not make diligent inquiry with respect to the value of the land, and in that she did not have the land examined, at an earlier period, to determine the quality of the soil and the like. On these propositions no rule can be announced that will apply to all cases alike. On this point, in *Meyer v. Fishburn*, 65 Neb. 626, it is said: "An exception to that part of the rule requiring a return of the property arises where the party guilty of the fraud and undue influence, and as a part of the general wrongful design, has by advice or interference induced the other party to part with his property."

Sufficient has been said to show that neither Mrs. Carson nor her son David was versed in business affairs. And, besides, the record shows that David Carson was ill during the first and only continuous year that the family were on the place, and that he was confined to the house for a considerable portion of the time by a stroke of paralysis, and that in the meantime the farming operations were carried on by his little brothers and a hired man. In 2 Black, Rescission and Cancellation, sec. 543, it is said: "In contracts for the sale, exchange, or lease of real property, the tendency of the authorities is to allow the injured party a longer time in which to claim and exercise his right of rescission, after acquiring knowledge of the facts which justify it, than in the case of sales of personalty or ordinary contracts not involving land."

But, in any case, defendants cannot complain because it does not appear that they have been injured by

the delay. The court in *Chase v. Chase,* 20 R. I. 202, declared: "So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable and operates as an estoppel against the assertion of the right." 6 Cyc. 300.

In *Allore v. Jewell,* 94 U. S. 506, at page 512, it is said: "The objection of the lapse of time—six years—before bringing the suit cannot avail the defendant. If during this time, from the death of witnesses or other causes, a full presentation of the facts of the case had become impossible, there might be force in the objection. But as there has been no change in this respect to the injury of the defendant, it does not lie in his mouth, after having, in the manner stated, obtained the property of the deceased, to complain that her heir did not sooner bring suit against him to compel its surrender."

With respect to a business transaction such as is involved here, it plainly appears that neither Mrs. Carson nor her son David had such understanding of business affairs as would enable them to cope with the defendants. The rule which is applicable to the facts before us is that the acts and contracts of persons who are infirm and without experience or business ability, and who are thereby liable to imposition, are void, if the nature of the acts and contracts of the opposing party justify the conclusion that the party alleged to have been subjected to the imposition has not exercised a deliberate judgment, but has been imposed upon, circumvented or overcome by cunning or artifice or undue influence. 1 Story, Equity Jurisprudence (13th ed.) sec. 238.

All disputed questions of fact with respect to the perpetration of the fraud, the time when Mrs. Carson made her discovery, and the like, under the theory on which

the case was tried, were submitted to and determined by the jury. It clearly appears that the case was tried without objection as a law action upon the theory that the value of Mrs. Carson's Stanton county land, of which she was deprived, should be the measure of damages, instead of the value of the 960-acre tract of land at the time it was acquired by Mrs. Carson and the time when she surrendered it. And this, no doubt, because Mr. Greeley had apparently put it out of his power to restore to her the Stanton county farm. We have examined the other assignments of alleged error which have been presented by defendants, but conclude that reversible error does not appear therein.

In the concluding part of their brief defendants frankly observe, with respect to the unfortunate plight in which Mrs. Carson found herself: "The jury were unable to get away from the fact that, * * * in the end, she had neither the farm she sold nor the ranch she bought." Defendants' observation is timely. In the fewest words possible it reflects the ultimate fact in the case and the theory upon which it was tried as well. As nearly as humanly possible, a measure of justice has been meted out by the jury, and it does not appear that any sound rule of law has been violated. It is proper to observe that, in a case where fraud is proved, it will not do for the court to pursue the shadow and refuse to take note of the substance. The district court wisely overruled the application for a new trial.

The judgment is

AFFIRMED.

Letton, J., took no part in this decision.