JERRY R. VRBSKY, APPELLANT, V. GEORGE ARENDT ET AL., APPELLEES.

FILED FEBRUARY 28, 1930. No. 26841.

*John E. Mekota, Claude S. Wilson, Roy F. Gilkeson* and *Hymen Rosenberg,* for appellant.

*C. C. Flansburg, W. T. Thompson, Perrin & Kier* and *M. V. Beghtol, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY and DAY, JJ., and MESSMORE, District Judge.

DAY, J.

The plaintiff brought an action at law to recover $14,000 damages alleged to have been sustained by virtue of a conspiracy to defraud by misrepresentation on the part of the defendants in a real estate trade. At the close of the plaintiff's evidence, the trial court directed a verdict for defendants on the theory that the action was barred by the statute of limitations.

The evidence in this case is wholly that on behalf of the plaintiff, and in reviewing the action of the trial court we must regard as conclusively established every point favorable to the unsuccessful party which the evidence tends to establish. *Curtice Co. v. Estate of Jones,* 111 Neb. 166; *Bank of Cortland v. Maxey,* 102 Neb. 20.

With this rule of law definitely in mind, the following statement of facts is delineated: The defendant Arendt was the owner of property in Lincoln, Nebraska, known as the Clayton Apartments, which he traded, with the assistance of defendants Nickles, Douthett, and Pardee, to the plaintiff, a Bohemian farmer, for 80 acres of land in Saline county and a mortgage on other land for $22,000. The mortgage was paid in full and the trade valuation of the land, $14,000, was realized, so that in truth the defendant Arendt received $36,000 for his apartment. The deal was consummated after negotiations between the parties for a period of several weeks, during which time numerous interviews were had between the plaintiff and the defendants, individually and collectively. Nickles, Douthett, and Pardee were real

estate men, to whom the plaintiff paid a commission upon, and as a part of, the consummation of the deal. The defendant Arendt, the owner of the apartment, had a joint office with the other defendants.

The defendants represented to the plaintiff that the apartment cost $42,000 to build and that it was worth more than $36,000. To add color to this representation and to inspire confidence in the plaintiff, he was told that Douthett was the superintendent in construction and knew the cost thereof. Douthett told him many times that the actual cost of the construction of the apartment, plus the cost of and the value of the ground, $18,000, was more than $42,000, and that the value of the apartment was more than $36,000. The apartment, according to the testimony of defendant Douthett, did not cost over $18,000, and the ground was worth only $3,500. It is clearly evident that, as a result of this trade, plaintiff sustained a loss of approximately $14,000. The plaintiff was not interested in the apartment because, as stated in his own words, "I am no good with city property." He was ignorant as to values of city property and knew not how to handle it. But the defendants sustained their contact with him by evincing their interest in assisting him to dispose of certain properties he owned. But they continuously and repeatedly centered his attention upon this particular deal. It was the controlling motif of their activities. The plaintiff, ignorant and inexperienced as to city property, believed and relied upon the representations made to him and closed the deal February 19, 1922. He did not discover the falsity of the representations until about December 8, 1926. This action was started June 22, 1928.

The principal assignment of error is that the trial court erred in finding, as a matter of law, that the plaintiff's cause of action was barred by the statute of limitations, and in directing a verdict for the defendants. Section 8512, Comp. St. 1922, provides that an action for relief on the ground of fraud shall be brought within four years, but the cause of action in such a case shall not be deemed to have

accrued until the discovery of the fraud. This statute has been construed by this court, the leading case being *Parker v. Kuhn,* 21 Neb. 413. There the rule is announced as follows: "An action for relief on the ground of fraud may be commenced at any time within four years after a discovery of the facts constituting the fraud, or of facts sufficient to put a person of ordinary intelligence and prudence on an inquiry, which, if pursued, would lead to such discovery." It cannot be doubted that this is the well-settled rule, since it has been adhered to by this court in an unbroken line of decisions, including among others: *Coad v. Dorsey,* 96 Neb. 612; *Bank of Miller v. Moore,* 81 Neb. 566; *Raymond v. Schriever,* 63 Neb. 719; *Horbach v. Marsh,* 37 Neb. 22; *Wright v. Davis,* 28 Neb. 479.

This transaction occurred February 19, 1922, while this suit was started June 22, 1928. The plaintiff alleges in his petition, and testifies in support thereof, that he first discovered the fraud December 8, 1926, meaning, under our construction of the words of the statute, that he then first discovered the fraud or facts constituting such fraud sufficient to put a person of ordinary intelligence and prudence upon an inquiry, which, if pursued, would have led him to such discovery. The defendants contend that the plaintiff in this case prior to four years from the date of bringing the action discovered such facts. The trial court followed their view. The defendants attribute knowledge to the plaintiff, first, because he went into possession February 23, 1923. The evidence upon this point is that he went into possession, but did not personally manage the apartment, nor collect the rent, but did visit the property a number of times. The plaintiff testifies that he did not discover through his possession of the property any facts constituting fraud. Even his living in the apartment would not necessarily put him in possession of such knowledge. In *Carson v. Greeley,* 107 Neb. 609, where the plaintiff lived on the land for an entire year, this court held that an action brought five years afterward was not barred. The plaintiff here, a Bohemian, was born in Heskov, Hungary, coming

to this country when eight years of age, with little education, and lived upon a farm almost up to the time of this transaction. Paraphrasing the language of Dean, J., in *Carson v. Greeley, supra,* the plaintiff knew nothing about city property; he placed great reliance in defendants, and did not have an understanding of business affairs that would enable him to cope with the defendants. Just as in the last cited case, he was lulled into a feeling of security by the defendants, who continued to represent to him that he had secured a property for less than at cost, and less than it was worth. Some of them secured another trade, which they represented to him as making him a $1,000 profit. This, no doubt, sustained his feeling of security and prevented a suspicion from arising. He was under no duty to have the property appraised until he had knowledge which would put him on inquiry. *Gerner v. Mosher,* 58 Neb. 135; *Raymond v. Schriever,* 63 Neb. 719. In the latter case, Mr. Justice Holcomb said: "The test is not whether the defrauded party has the opportunity or power to discover the fraud, but whether he was in possession of such facts as were sufficient to demand an investigation, which, if pursued, would have disclosed the fraud."

Next it is argued that one Humpe, a real estate man, was his agent for managing the apartment and collecting the rents. Plaintiff asked him to find a buyer, but price was not discussed. This man knew the value of said apartment, but testified that he never told plaintiff, because, as he said, it was none of his affairs. This corroborates the plaintiff's testimony. It is evident that knowledge of facts constituting fraud cannot be imputed to the plaintiff from this circumstance. Particularly is this true since at this time plaintiff would not have believed him as against defendants, as is evidenced by the fact that, when some of the apartments became vacant and Humpe did not immediately lease them, he turned the property over to Douthett to manage.

The final contention of defendants, in this regard, is that on August 2, 1923, he traded with defendants Nickles and Douthett, representing an owner of a hotel in Belgrade,

Nebraska, wherein he traded the apartment for said hotel, and within two weeks thereof discovered that he had been defrauded, and that this transaction should have put him upon inquiry in the former deal. We consider this subsequent transaction only as it bears upon the plaintiff's knowledge of such facts constituting fraud as would start him upon a course of inquiry which would lead him to the ultimate discovery of such fraud. The second deal only included two of the defendants in this case. It was not the same transaction. For the purpose of that trade, his apartment was valued at $36,000. He thought it was worth that and so averred when he brought action on that tort. He testified in that case that this apartment was worth $36,000. It was not until the case was tried, December 8, 1926, when defendant Douthett, and many other real estate men, testified that the value was around $21,500, and not $36,000, that there is any direct evidence that knowledge of the fraud was brought to him. There is no case, as far as we are aware, which holds that a man must be so keenly on the scent of efforts to defraud him that, without knowledge of any fact which would lead a prudent man to suspect he had been defrauded, he is required to make investigations merely because it is in his power to do so. *Raymond v. Schriever*, 63 Neb. 719.

Taking into consideration the evidence upon the question as to plaintiff's knowledge of the facts which should have put a person of ordinary intelligence and prudence on an inquiry, which, if pursued, would lead to a discovery of the fraud, we are of the opinion that it became a question of fact for the jury as to whether or not he was apprised of any fact which imposed upon him the duty to resort to an appraisal of the property. No general rule can be announced covering all cases, but it is a question under all the circumstances of each case for the determination of the jury. *Raymond v. Schriever, supra*; *Carson v. Greeley, supra*; *Comfort v. Robinson,* 155 Mich. 143; *Oleson v. Oleson,* 90 Neb. 738.

The trial court should not direct a verdict of the jury

unless the evidence is so clear upon every point upon which the verdict may depend that reasonable minds cannot come to any other conclusion. *Bank of Cortland v. Maxey,* 102 Neb. 20. The evidence in this case, as examined and discussed herein, is not so clear that reasonable minds could not come to a different conclusion than the trial judge. Whereupon, it follows as a practical conclusion that the trial judge usurped the function and invaded the province of the jury when he determined the question of fact as to the time when the plaintiff in this case discovered facts constituting fraud sufficient to place him upon an inquiry which would lead him to a discovery of the fraud as contemplated by the statute.

Some confusion attended the trial of this case, both on the part of the trial judge and the parties, most of which arose out of the fact that many of the cases decided by our court are in equity, wherein the court determines the fact as well as the law. In a law action to recover damages for fraud, the question as to the time of the discovery of the fraud is a question of fact, and is to be determined, as other questions of fact, by the jury.

We have carefully read the record, have given diligent attention to the briefs and oral arguments, and find no other question necessary for our determination. The court should have submitted the case to the jury, and erred in directing a verdict for defendants. The judgment is reversed and the cause remanded.

REVERSED.

ROSE, J., dissenting.

The decision will permit the jury to find that plaintiff, during a period of four years, did not discover he had been defrauded by false representations of value in a transaction through which he acquired title to an apartment house with the resulting right to rentals therefrom in lieu of former income from the consideration paid by him. The effect of such a finding by a jury will prevent the running of the four-year statute of limitations against an action at law to recover damages for the fraud, assuming fraud was com-

mitted. The law applicable to the facts of this case has been stated as follows:

"If the fraud ought to have been discovered, and would have been if reasonable diligence had been exercised by the plaintiff, the statute will run from the time such discovery ought to have been made." 17 R. C. L. 858, sec. 218; *Wright v. Davis*, 28 Neb. 479.

In my view of the evidence, the exercise of reasonable diligence would, as a matter of law, have resulted in the discovery of the alleged fraud within the statutory period of four years. Definite facts disclosing a reasonable excuse for the failure to discover the truth within four years are wanting. There is nothing in the record to show that plaintiff did not have ordinary intelligence. He accumulated, and for years preserved, a considerable fortune. The plea that he did not discover fraud within four years is at variance with the common impulse of rational men to contemplate the value and earning capacity of their property, when income therefrom is a means of livelihood. Rentals from the apartment house were measures of value. They imparted to plaintiff notice of fraud inducing the purchase for a fraudulent consideration, if fraud were committed. Unavoidable knowledge of facts disclosing fraud is equivalent to a discovery of the fraud. Credulous reliance on the vendor of the apartment house and on the agents who represented him in the making of the sale is no excuse for plaintiff's failure to discover within four years misrepresentations of value in that transaction. The law recognized the competency of plaintiff to testify to the value of his own property when acquired and did not permit him to disregard the promptings of his own senses, his own sources of information and his own right to redress and, by denying knowledge of the fraud, escape the consequences of his own failure to exercise reasonable diligence.

In my view of the record, the decision of the majority delegates to the jury a power committed to the courts alone.

Since the jury are now permitted to prevent the bar of the statute in cases of this kind, I think the purposes of the

legislature in limiting the time in which actions at law for fraud may be commenced will often be defeated and the right to litigate stale claims preserved until witnesses disappear. I agree with the district court that the action is barred on the face of the record.