**NUCOR CORPORATION, Appellee,**

v.

**NEBRASKA PUBLIC POWER DISTRICT, Appellant.**

**Nos. 87–1963, 87–2046.**

United States Court of Appeals, Eighth Circuit.

Submitted May 12, 1989.

Decided Dec. 13, 1989.

**1344**

James A. Eske, Lincoln, Neb., for appellant.

Roger P. Cox, Lincoln, Neb., for appellee.

Before JOHN R. GIBSON and WOLLMAN, Circuit Judges, and HEANEY, Senior Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Nebraska Public Power District appeals from a judgment in favor of Nucor Corporation on a breach of contract claim against Nebraska Power based on electric rate overcharges. A panel of this court heard argument and then remanded for additional findings on the issue of whether the Johnson Act, 28 U.S.C. § 1342 (1982), required us to hold that the district court lacked jurisdiction to entertain this action. The district court [1] tried the issue and certified its findings to this court. We affirm the district court's determination that the Johnson Act did not deprive it of jurisdiction, and we affirm the judgment on the merits.

Nebraska Power is a public corporation which provides wholesale and retail electric service throughout Nebraska. It owns and operates electric generation, transmission, and distribution facilities. Nebraska Power's largest customer, as measured by electrical usage, is Nucor, a Delaware corporation with its principal place of business in Charlotte, North Carolina. Nucor operates a steel mill near Norfolk, Nebraska, which uses electric arc furnaces to melt scrap metal. In 1972, Nebraska Power and Nucor entered into a contract for Nebraska Power to fulfill Nucor's electrical needs at the Norfolk plant. The contract contained a rate schedule, designated as HTS–2, which is available only to industrial or manufacturing customers which meet minimum demand requirements and receive service directly from high voltage facilities. Nucor is the only customer to qualify for the HTS–2 rate.

Nebraska Power establishes its electric rates through resolutions enacted by its board of directors. No state administrative agency in Nebraska is authorized to review

1. The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska.

Nebraska Power's rates; rather, rates are subject to direct judicial review in state court. Nebraska law requires that the rates be fair, reasonable, and nondiscriminatory. Neb.Rev.Stat. § 70–655 (Reissue 1986).[2] The contract in issue contained a rate review provision which also required that the rate be fair, reasonable, and nondiscriminatory. The contract further provided that the rate must be "sufficient, but only sufficient, to collect the expense and estimated net revenue requirements associated with Large Industrial Primary Power Service." During 1973 and at two year intervals thereafter, Nebraska Power was required by the contract to prepare a study of the operating expenses and estimated net revenue requirements for this service, and Nucor's rates were to be based on the results of the studies.

Nucor brought this action against Nebraska Power claiming that Nebraska Power had continuously breached the agreement by charging unfair, unreasonable, and discriminatory rates to Nucor by using incorrect, improper, and unfair methods to allocate costs; failing to grant credits for hydroelectric power; and failing to follow the recommendations of its own consultant as to the rate charged Nucor. It prayed for damages and appropriate injunctive relief.

At trial, the jury was instructed on a breach of contract theory which required Nucor to establish by a preponderance of the evidence that Nebraska Power had breached one or more of its obligations under the rate review provision, that the breaches proximately caused damage to Nucor, and to show the extent of Nucor's damage. The jury was instructed that Nebraska law, as embodied in section 70–655, authorized the board of directors to establish rates and required that such rates be fair, reasonable, and nondiscriminatory. The jury was also instructed that this section of the Nebraska statutes should be considered part of the contract between Nucor and Nebraska Power. Special interrogatories were submitted to the jury, and the jury found that the rate for each year from 1974 through 1986 was not fair, reasonable, and nondiscriminatory. The jury also specified the amount of damages sustained by Nucor for each year, an amount totalling $7,492,340. The court entered judgment only for damages occurring after August 14, 1980, determined to be $4,403,546.70, because it found that the statute of limitations applicable to written contracts barred recovery for damages before that date.

Nebraska Power appealed the judgment to this court, arguing that ratemaking is a legislative function which cannot be exercised by the courts, that the district court usurped the legislative power vested in the Nebraska Power board of directors, and that the contract rate review provision neither alters the nature of the cause of action nor permits an award of damages. Nebraska Power further asserts that the district court erred in permitting the jury to construe the contractual and statutory terms and in admitting certain evidence.

When a panel of this court heard this appeal, a question of jurisdiction arose because of concern that the Johnson Act[3]

2. The statute provides:
The board of directors of any district organized under or subject to Chapter 70, article 6, shall have the power and be required to fix, establish, and collect adequate rates, tolls, rents, and other charges for electrical energy, water service, water storage, and for any and all other commodities, including ethanol, services, or facilities sold, furnished, or supplied by the district, which rates, tolls, rents, and charges shall be fair, reasonable, nondiscriminatory, and so adjusted as in a fair and equitable manner to confer upon and distribute among the users and consumers of commodities and services furnished or sold by the district the benefits of a successful and profit-

able operation and conduct of the business of the district.
Neb.Rev.Stat. § 70–655.

3. The Johnson Act provides:
The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a ratemaking body of a State political subdivision, where:
(1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,
(2) The order does not interfere with interstate commerce; and,

applied. The Johnson Act prohibits district courts from interfering with ratemaking by public utilities if the four criteria of the Act are met. The case was then remanded to the district court for additional findings on the jurisdictional issue. The district court began by noting that Nebraska Power is a publicly-owned utility which regulates itself, and that its ratemaking decisions are not subject to review by any independent regulatory body. Although the court expressed serious reservations about whether the Johnson Act applied in such circumstances, it did not resolve the issue.

Assuming that the Act did apply, the court recognized that all four statutory criteria must be satisfied in order to bar federal jurisdiction, citing our decision in *Arkansas Power & Light Co. v. Missouri Public Service Commission*, 829 F.2d 1444, 1449 (8th Cir.1987). Since subject matter jurisdiction in federal court is based solely upon diversity of citizenship, the parties conceded that the first element had been satisfied. As to the second element, requiring that the order not interfere with interstate commerce, the court noted that the parties had not addressed this issue but nevertheless concluded that the order could potentially interfere with interstate commerce. This conclusion was based on evidence that Nebraska Power sold Nucor electricity generated in other states, that Nucor's products were distributed in other states, and that Nucor's corporate headquarters were located outside of Nebraska.

The court then turned to the third requirement of the Johnson Act, which requires that the rate order be made after reasonable notice and a hearing. The court examined both the due process clause of the Constitution and Nebraska statutes, and found that Nebraska Power did not provide reasonable notice to Nucor under either standard. Finally, the court analyzed the fourth requirement of the Johnson Act, that there exists a plain, speedy, and efficient remedy in the state courts. The court found that the state court remedy, which, in most cases, would be to remand to the board of directors to establish new rates, was inadequate. Accordingly, the court determined that the Johnson Act did not deprive federal courts of jurisdiction in this case, and certified its findings to this court.

## I.

We first consider the issue of federal jurisdiction. It is well-settled that the plaintiff bears the burden of establishing subject matter jurisdiction. Nebraska Power asserts that the district court erred by improperly requiring it to bear the burden of establishing that federal jurisdiction was lacking rather than requiring Nucor to establish that jurisdiction was present. Our reading of the record, however, reveals that the court properly placed the burden upon Nucor to establish federal jurisdiction. Furthermore, we believe the record fully supports the court's conclusion that the Johnson Act does not preclude federal jurisdiction in this case.

The district court, in its order determining that the Johnson Act did not bar its jurisdiction, expressed serious doubts that the Act was intended to preclude federal jurisdiction in cases such as this one, where rates are established by a public utility not regulated by an independent state agency. Nebraska Power argues that since the Johnson Act applies to all ratemaking bodies of political subdivisions, this necessarily includes the board of directors of the Nebraska Public Power District. As the district court did not rest its decision on this ground, it is not necessary that we do so.[4]

---

(3) The order has been made after reasonable notice and hearing; and,

(4) A plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1342.

4. The legislative history of the Act as passed, as well as that of a previous version, specifically referred to the existence of state commissions authorized to review and determine rates charged by public utilities. Also, during discussion of the bill, the bill's sponsor, Senator Johnson, referred to the independent regulation of public utilities and the importance of the bill to every state that has a public service commission. 28 Cong.Rec. 1829 (1934).

We express serious reservations as to whether the Act was intended to apply in this situation. Nebraska Power's argument that only about a

We may resolve the jurisdictional issue, however, without holding that the Johnson Act is inapplicable here because we are satisfied that the district court correctly determined that the Act's requirements are not met and thus federal courts are not deprived of jurisdiction by the Act.

■ We turn first to the notice requirement of the Johnson Act and recite the district court's findings of fact on this issue. Nucor was Nebraska Power's single largest retail customer and the only customer qualified to receive service under the HTS–2 rate schedule. Nebraska Power's board of directors set utility rates by adopting rate resolutions during board meetings at Nebraska Power's general office in Columbus, Nebraska. Columbus is approximately 45 miles from Norfolk, which is close to Nucor's steel mill. Advance notice of each board meeting was published in *The Columbus Telegram* which has a circulation of 10,000 to 12,000 readers. Norfolk is not within the *Telegram's* coverage area. Neither Nucor nor its officers subscribed to the *Telegram*, and, in fact, the newspaper had only one subscriber in Stanton county where Nucor's steel mill is located. Nucor officials testified that Nucor had never received advance notice of rate increases, and had no knowledge of their right to appear at hearings to inquire about rate increases.

In certain situations, additional notice of board meetings and rate changes was given to Nebraska Power customers. Every two years, Nebraska Power conducted a wholesale rate study and notified by mail all 97 wholesale customers of their right to request a hearing on rate changes. Nebraska Power has held five or six rate hearings since 1970, and between 50 and 175 people have attended each meeting. Also, Nebraska Power routinely has given notice of proposed rate action to "retail towns," which sell electricity to their residents, pursuant to an agreement with the towns. In addition, Nebraska Power has given notice of proposed rate increases to approximately 200 retail towns as an informational courtesy.

Nebraska Power mailed monthly billing statements to all customers but has never included notices of meetings with these mailings. Nebraska Power has, however, occasionally included advertising inserts with the billing statements. Advertisements are also routinely placed in many Nebraska newspapers.

Nebraska Power makes no effort to argue that these findings by the district court are clearly erroneous. Rather, it argues that it is irrelevant to view Nucor's rates in a factual vacuum, or to hold that Nucor was entitled to special notice just because other customers in other situations have received individualized notice. Nebraska Power stresses that Nucor neither inquired about future costs or anticipated rate changes, nor requested specific advance notice. Furthermore, each time there was a rate change, Nebraska Power's rates and contracts manager met with Nucor's general manager to review the change and answer questions.

Nebraska Power points out that the Nebraska Public Meetings Law, Neb.Rev.Stat. § 84–1408 to –1414 (Reissue 1987), does not specify a method for publication of notice, but instead requires "reasonable advance publicized notice of the time and place of each meeting by a method designated by each public body." *Id.* § 84–1411. In compliance with this mandate, Nebraska Power had adopted a resolution that notice would be published in the *Telegram*, that the assistant secretary would notify any members of the news media requesting notification, and that a current agenda of board meetings would be kept available for public inspection at its Columbus office.

third of the 2,096 publicly-owned electric utilities in the United States are subject to regulation by state agencies does not shed light on the intent of Congress in passing the Johnson Act. We believe that the primary thrust of the Act is to prevent public utilities from having access to a federal forum to redetermine rates previously reviewed by a state regulatory commission. As the rates before us were set by the board of directors of Nebraska Power, there is no danger of interfering with an independent regulatory agency's review of these rates because no such agency exists here.

Nebraska Power asserts that its duty to provide notice and a hearing is to be determined only by reference to state law, and not by a due process standard. The district court rejected this argument, recognizing that the notice and hearing requirement of the Act had been interpreted as requiring that the minimum standards of due process be met. The court examined Nebraska case law to determine what constitutes "reasonable notice" as required by due process and noted that "notice can be considered adequate only if it is transmitted in a manner which, at a minimum, 'has a reasonable certainty of resulting' in actual notice." *Gruenewald v. Waara,* 229 Neb. 619, 624, 428 N.W.2d 210, 215 (1988) (quoting Restatement (Second) of Judgments § 2(1)(b), at 34 (1982)).

The evidence fully supports the district court's finding that the notice given Nucor did not have a reasonable certainty of giving Nucor actual notice. The publication in *The Columbus Telegram,* a newspaper with very limited circulation in the city of Norfolk, did not fulfill Nebraska Power's obligation. The notice did not state that ratemaking was the purpose of the board meetings, but stated little more than that an agenda was available at the general office. Further, Nebraska Power regularly performed cost analyses for wholesale rates and based Nucor's yearly rate increases, in part, on these analyses. The wholesale customers were given notice of the rate changes based on the analyses while Nucor, a retail customer, was not. The district court did not err in its determination that reasonable notice was lacking here.

■ It is well-established that all four criteria of the Johnson Act must be satisfied to preclude federal jurisdiction, and the failure to satisfy the notice requirement is sufficient to end our examination. *Arkansas Power & Light Co. v. Missouri Pub. Serv. Comm'n,* 829 F.2d 1444, 1449 (8th Cir.1987). We are satisfied, however, that the district court correctly determined that another criterion is not met here either. The Johnson Act requires that the rate order not interfere with interstate commerce. Nebraska Power asserts that the district court erred in finding such interference because Nucor failed to establish that the rate was directly burdensome or discriminatory. We recognize the tentative nature of the court's comments, but nevertheless conclude that the court did not err. There was evidence that Nebraska Power wrongfully deprived Nucor of Western Area Power Administration benefits and that this resulted in approximately $7 million in overcharges to Nucor. Nucor presented testimony that this affected the cost of Nucor's goods for sale in interstate commerce. Considering this and the other factors identified by the district court, we believe that the court did not err in assessing the impact on interstate commerce.

We conclude that the district court did not err in determining that the Johnson Act did not deprive it of jurisdiction to consider the merits of this case.

■ Nebraska Power appears to suggest that abstention under *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), would be appropriate in this case. We believe that the facts justifying abstention in that case are lacking here. In *Burford,* the authority for the challenged decisionmaking had been delegated to an independent commission, and the state had developed a scheme to centralize direct review of the commission's decisions in state courts of a single Texas county. In the case before us, however, the challenges are not directed at the decisions of an independent regulatory commission, nor is there a centralized state judicial review scheme in place. In addition, the fact that Nebraska Power has delayed raising the abstention issue until after a full trial on the merits shows a lack of respect for the considerations of comity underlying *Burford.*

## II.

The essence of Nucor's breach of contract claim is that Nebraska Power failed to fulfill its contractual obligations to charge fair, reasonable, and nondiscriminatory rates, and to perform a cost study every two years. Specifically, Nucor ar-

gues that Nebraska Power failed to properly allocate demand costs and to regularly perform a fully-allocated cost of service study. According to Nucor, this caused Nucor to pay a disproportionate share of the demand-related costs of the power district during the years 1974 through 1986. Nucor also argues that various undisclosed charges were mishandled in determining Nucor's rate: (1) allocating the carrying, operation, and maintenance charges associated with a 230 kilovolts transmission line; (2) depriving Nucor of its full allotment of Western Area Power Administration benefits; and (3) using an incorrect production cost adjustment factor for Nucor.

■ Nebraska Power's substantive arguments essentially revolve around how the action is characterized, asserting that this case is more accurately characterized as ratemaking rather than as a breach of contract claim. It asserts that ratemaking is a legislative function which may not be exercised by courts, that the court's submission of this case to the jury usurped the legislative power vested in the board of directors, that the contract rate review provision neither alters the nature of the action nor permits an award of damages, and that it was error to permit the jury to construe the terms of the contract and statute.

The nature of this action must be determined by the pleadings and the issues submitted to the jury. In its complaint, Nucor framed its cause of action as one for breach of contract based upon breach of the rate review provision of the contract, violation of section 70–655 requiring Nebraska Power to charge rates that are fair, reasonable, and nondiscriminatory, use of improper practices to allocate costs, and use of practices contrary to the recommendation of its own consultant. The case was submitted to the jury as a breach of contract claim, and the jury was given special interrogatories which required it to specifically decide whether the board had set rates which were fair, reasonable, and nondiscriminatory. We would be troubled by this language in the interrogatories, which required the jury to make findings which are arguably related to a regulatory func-

tion, were it not for the fact that this language is present in both the contract and the statute. Both require rates to be "fair, reasonable, and nondiscriminatory," and the jury was instructed that section 70–655 was to be considered a part of the contract. Thus, in order to determine whether Nebraska Power had breached the contract, the jury had to determine whether Nucor's rates were fair, reasonable, and nondiscriminatory. The court's instructions to the jury were not erroneous in this regard.

In support of its arguments, Nebraska Power identifies certain Nebraska Supreme Court decisions, particularly *McGinley v. Wheat Belt Public Power District*, 214 Neb. 178, 332 N.W.2d 915 (1983), and *York County Rural Public Power District v. O'Connor*, 172 Neb. 602, 111 N.W.2d 376 (1961), as defining the ratemaking authority of the board of directors and the court's role in reviewing such rates. *York* established that courts have the authority to review rates set by public power districts. *Id.* at 608, 111 N.W.2d at 379. *McGinley*, Nebraska Power argues, stands for the proposition that the only remedy available upon review is for a court to remand the case to the board of directors to exercise its ratemaking function. Since ratemaking is a legislative, not a judicial, function, Nebraska Power concludes that submitting this case to a jury usurped the legislative power of the board and constituted an impermissible attempt at ratemaking.

■ We believe Nebraska Power's reliance on *McGinley* is misplaced. The *McGinley* court held that "the proper action to take in a case of this nature, *absent specific evidence of individual damages*, is to require the board of directors ... to set a proper rate." *McGinley*, 214 Neb. at 189, 332 N.W.2d at 921 (emphasis added). This suggests that a court presented with evidence of individual damages, as was the court below, is empowered to award monetary damages rather than remanding to the board of directors. In addition, an underlying assumption of Nebraska Power's argument is that Nucor's action is based on allegedly discriminatory rates, as was the

case in *McGinley*. This mischaracterizes the nature of the suit before us, which is a claim to recover overcharges based on a breach of contract. *McGinley* dealt with the difference in rates charged customers in similar circumstances. The focus here is upon the rate charged only one customer, Nucor. Moreover, the jury verdict and the judgment entered by the court did not determine what rates Nebraska Power must charge in the future, but rather, merely determined the amount of past overcharges.[5]

Nebraska Power asserts that the district court erred in permitting the jury to construe the terms of the contract and the statute in issue, Neb.Rev.Stat. § 70–655, because the terms in issue were not ambiguous. We believe there was no error. The contract, which incorporated the language of the statute, used words that were ambiguous in the sense that they were of a sufficiently technical nature to be the subject of expert testimony. Both parties presented expert testimony which offered the jury differing views of the terminology. Under the circumstances, it was proper for the jury, aided by expert testimony, to consider the terminology in issue here. The role of the jury in such circumstances has been recognized by Nebraska cases. *Olds v. Jamison*, 195 Neb. 388, 392, 238 N.W.2d 459, 462 (1976); *Ely Constr. Co. v. S & S Corp.*, 184 Neb. 59, 67, 165 N.W.2d 562, 567 (1969). The parties raise numerous points in their arguments which we believe lack sufficient merit to justify further discussion of this issue.

### III.

Nebraska Power asserts error in the district court's resolution of certain evidentiary issues. It argues that it was improper for the court to receive testimony from Nucor's experts regarding terms of art and industry standards, to permit the jury to construe the contract and statute with reference to this testimony, and to receive evidence and testimony concerning rate making methodology.

■ The crux of Nebraska Power's argument is that the court should have defined for the jury the terms "fair," "reasonable," and "non-discriminatory," rather than permitting experts to testify as to their meanings and instructing the jury that it could consider the experts' definitions. These terms are not technical in nature, Nebraska Power argues, and thus expert testimony is not necessary. It relies on *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505 (2d Cir.), *cert. denied*, 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977), in which the court held that it was improper to allow a securities expert to testify as to the meaning of the term "best efforts" in a contract dispute. *Id.* at 508–09.

We believe the court did not err in admitting this expert testimony. Courts have frequently recognized the value of expert testimony defining terms of a technical nature and testifying as to whether such terms have acquired a well-recognized meaning in the business or industry. *See Energy Oils v. Montana Power Co.*, 626 F.2d 731, 736–37 (9th Cir.1980). We note that Nebraska Power experts also testified as to the meanings of terms of art and whether Nebraska Power's ratemaking methods were used elsewhere in the industry. Finally, we observe that the admission of evidence is largely left to the discretion of the trial court. We conclude that there was no abuse of discretion in admitting this testimony and no error of law in instructing the jury as to the use of such testimony.

■ The court also erred, according to Nebraska Power, in admitting an exhibit prepared by Nucor which utilized a four-month coincident peak cost allocation method. Both parties vigorously argue, in ex-

---

5. The dissent argues that we accept Nucor's cost allocation method as the only fair, reasonable, and nondiscriminatory method. This mischaracterizes our holding. We simply hold that a jury could properly find, based upon evidence of Nebraska Power's treatment of several items of cost allocation, outlined above, that the particular rate charged was not fair, reasonable, and nondiscriminatory, and, upon being presented with specific evidence of individual damages, could properly determine the amount of past overcharges.

haustive technical detail, whether this evidence was properly admitted.

We are not persuaded that the court erred in this respect. We first observe that Nebraska Power also introduced an exhibit demonstrating a method of cost computation. More importantly, this case revolves around alleged overcharges resulting from improper cost allocation, and resolution of these issues required determining whether the rates were fair, reasonable, and nondiscriminatory. We believe that this exhibit was relevant to such issues. In essence, the parties attempt to escalate the simple question of admissibility of an exhibit into an additional opportunity to address the merits of this case.

■ Nebraska Power's final argument is that the verdict and judgment are not supported by the evidence. This argument is primarily addressed to the amount of damages awarded, based on an assertion that the total jury award bears no relationship to Nucor's evidence of damages. This is without merit. Where it has been proven that damage has been sustained, and the only uncertainty concerns the exact amount, there need only be evidence from which the amount of damages can be ascertained with reasonable certainty. *Nebraska Pub. Power Dist. v. Austin Power*, 773 F.2d 960, 969 (8th Cir.1985); *Delp v. Laier*, 205 Neb. 417, 425, 288 N.W.2d 265, 269–70 (1980). Nucor's expert, Stephen Daniel, who was vigorously cross-examined, testified that the total amount of overcharges was $15,744,844. We believe there is sufficient evidence to support the jury's determination.

## IV.

Nucor argues that the court erred in entering judgment only for damages sustained in the years 1981 to 1986, excluding the earlier years as barred by the statute of limitations. Nucor contends that it was entitled to a jury determination of whether there was fraudulent concealment by Nebraska Power and whether such conduct defeats the operation of the statute of limitations. Nucor essentially offers two arguments in support of its fraudulent conceal-

ment theory: (1) that Nebraska Power committed affirmative acts of fraudulent concealment, which included inducing Nucor to locate in its service area with awareness of the disparity between the parties' knowledge of ratemaking methodology, withholding various cost studies, and communicating incorrect information regarding cost allocation; and (2) that even if there were not affirmative acts of fraudulent concealment, there is a fiduciary relationship between the parties such that mere silence on the part of Nebraska Power constitutes fraudulent concealment which will toll the statute of limitations.

■ Addressing first the claim that Nebraska Power committed affirmative acts of fraudulent concealment which warrant tolling the statute of limitations, we are not persuaded that the district court erred in refusing to submit this issue to the jury. While we recognize that issues of fraudulent concealment relating to a statute of limitations defense are normally questions of fact for the jury, *Vrbsky v. Arendt*, 119 Neb. 443, 448–49, 229 N.W. 337, 339 (1930), when the evidence leaves no room for a reasonable difference of opinion, the district court may resolve the issue as a matter of law. *Trace X Chemical, Inc. v. Canadian Indus., Ltd.*, 738 F.2d 261, 265 (8th Cir.1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985). Moreover, "a mere scintilla of evidence is insufficient to present a question for the jury." *J.E.K. Indus. v. Shoemaker*, 763 F.2d 348, 353 (8th Cir.1985).

■ We also believe that the court did not err in refusing to submit to the jury Nucor's claim that a fiduciary relationship existed between the parties such that Nebraska Power had a duty to disclose, and therefore its silence constituted fraudulent concealment. The Nebraska Supreme Court has not had occasion to decide whether the existence of a fiduciary relationship prevents a cause of action from being barred by the statute of limitations if the defendant commits no affirmative acts of concealment but is merely silent. Nor has the Nebraska Supreme Court ruled

that a public utility owes the obligations of a fiduciary to its customers. In the absence of guiding precedent, "we accord substantial deference to the district court's interpretation of state law." *Kansas State Bank in Holton v. Citizens Bank of Windsor*, 737 F.2d 1490, 1496 (8th Cir. 1984).

Finally, we address Nucor's argument that the district court erred in failing to award prejudgment interest. Nucor's argument is without merit. The court correctly recognized that, under Nebraska law, prejudgment interest may only be recovered on claims which are liquidated. The court acknowledged that the design of rates is not an exact science and concluded that Nucor's claim was not liquidated. It was not possible to compute the amount of damages here with exactness without reliance upon opinion or discretion. *See Hill v. City of Lincoln*, 221 Neb. 719, 723, 380 N.W.2d 296, 299 (1986).

In sum, we hold that because the requirements of the Johnson Act are not satisfied, the Act does not preclude federal jurisdiction in this case. We also hold that Nucor is entitled to its judgment of $4,403,546.70 on its breach of contract claim but is not entitled to prejudgment interest. Accordingly, we affirm the judgment of the district court.

HEANEY, Senior Circuit Judge, concurring in part and dissenting in part.

I concur in Parts I, III and IV of the majority opinion as far as it is necessary to reach those issues. I dissent from Part II.

While I accept that the Power District may have breached its duty to charge fair, reasonable and nondiscriminatory rates, I believe that it was error for the district court to submit the question of damages to the jury. Damages are too speculative.

This Court lacks both the wherewithal and the legislative authority to determine damages in this instance because more than one fair, reasonable and nondiscriminatory rate schedule may exist. Courts do not have the expertise or resources necessary to determine proper rate schedules or

to permit an integrated approach to rate regulation. Moreover, the power of a Nebraska court is limited to determining only whether the rate schedule in question is fair, reasonable and nondiscriminatory. See, *e.g., McGinley v. Wheat Belt Public Power District*, 214 Neb. 178, 332 N.W.2d 915 (1983).

> Fixing a compensation which public service corporations may charge for services to be rendered by them is legislating; it is lawmaking. The power of the courts is limited to declaring what the law is, and they are precluded by the Constitution from legislative functions; ... [W]e know of no court which has ever claimed it had the authority to determine what compensation would be a reasonable one for a service to be performed by such a corporation.

*Nebraska Telephone Co. v. State*, 55 Neb. 627, 76 N.W. 171, 174 (1898). *See also, Metropolitan Utilities Dist. v. City of Omaha*, 171 Neb. 609, 107 N.W.2d 397 (1961) ("It would appear there are several formulas, under approved accounting methods, by which the board of directors of the [sewage] district could determine the cost.... However, it should be remembered that it is not for the city or the courts to determine what the formula is to be, but it is a matter for the board of directors of the district to decide.... "). Thus, I am unwilling to accept, as the majority appears to have done, that Nucor's cost allocation methodology is the only fair, reasonable and nondiscriminatory method.

The remedy of damages is not supported by Nebraska case law. *McGinley v. Wheat Belt Public Power District*, 214 Neb. 178, 332 N.W.2d 915 (1983); *York County Rural Public Power District v. O'Connor*, 172 Neb. 602, 111 N.W.2d 376 (1961);

In *York County*, the Nebraska Supreme Court held that the plaintiff power district could recover in damages the difference between amount paid to the plaintiff by the defendant consumer and amount required by a new rate schedule adopted by the plaintiff power district that the court held

to be fair, reasonable and nondiscriminatory.

In *McGinley*, the Nebraska Supreme Court denied damages even though it found the rate charged to plaintiffs unfair, unreasonable and discriminatory. *McGinley v. Wheat Belt Public Power District*, 332 N.W.2d at 921.

Having therefore found the rate invalid, we are now confronted with determining the proper relief to be granted. Members of Rate Class 76 [6] have asked this court to render judgment for the members of Rate Class 76 in an amount equal to the difference between what members of the Rate 75 paid and what members of Rate 76 paid. Were we to do that, we would be in effect granting to members of Rate Class 76 the same unjust and arbitrary rate which was granted to members of Rate Class 75 and which we have now declared invalid. Such relief is not appropriate in a case of this nature....

While there are cases to be found where damages such as requested by the plaintiffs herein have been awarded, they are cases generally where both a statute authorizes such damages and the evidence supports such damages.

*Id.*

The majority argues that the instant case is distinguishable from *McGinley* because "specific evidence of individual damages" exists. *Ante* at 1349 (quoting *McGinley*, 332 N.W.2d at 921). I disagree. First, even though the rate charged by the Power District was unfair, unreasonable and discriminatory, there exists no basis upon which a court could determine the fair, reasonable and nondiscriminatory cost allocation methodology that the Power District will ultimately choose. Second, the practical effect of granting damages in the instant case is similar to the practical effect of granting damages in *McGinley*. In both cases, the validity of amount paid is questionable. *See Federal Power Commission v. Texaco, Inc.*, 417 U.S. 380, 387,

94 S.Ct. 2315, 2321, 41 L.Ed.2d 141 (1974) ("To declare that a particular method of rate regulation is so sanctified as to make it highly unlikely that any other method could be sustained" is inconsistent with clearly articulated Supreme Court precedent). Thus, damages are speculative.

The fact that a written contract exists between Nucor and the Power District does not expand the scope of judicial review, since the contract terms, "fair, reasonable and nondiscriminatory," are subject to the provisions of Neb.Rev.Stat. § 70–655. The contract language is entirely consistent with the statutory language, and the meaning of each is the same, controlled by the statute. A holding that the Power District breached its contract with Nucor by charging an unfair, unreasonable and discriminatory rate schedule is nothing more or nothing less than a holding that the Power District breached its statutory duty. The distinction between an action for a breach of contract and an action for a breach of statutory duty, whatever that may be in this instance, has no relevance as to the question of whether damages can be awarded or calculated.

The appropriate remedy in this circumstance is to remand the matter to the Board of Directors of the Power District and order it to hold a prompt hearing as to rates for the years in question. All classes of consumers, including Nucor, the farmers who use power for irrigation, and the homeowners who use power for air conditioning, must be given adequate notice and opportunity to participate at this hearing. Once this is done, the Power District can determine the fair, reasonable and nondiscriminatory rates it intends to charge all consumers. From that determination, the Power District must, at that time, rebate all overcharges that have resulted.

---

**6.** *McGinley* involved different rates charged to consumers who used energy in exactly the same manner but for the date they signed on as customers of the Power District. Rate Class 75 included all customers receiving service before a certain date in 1975. Rate Class 76 included all customers receiving service after that date in 1975.